No. 50,834

STATE OF KANSAS, *Petitioner,* v. FRED W. PHELPS, SR., *Respondent.*

Disciplinary Proceeding

(598 P.2d 180)

*Philip A. Harley,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*A. J. "Jack" Focht,* of Wichita, argued the cause, and *Fred W. Phelps, Jr.,* of Topeka, and *F. G. Manzanares,* of Topeka, were with him on the brief for the respondent.

*Per Curiam:* On March 13, 14 and 15, 1978, a panel of the State Board of Law Examiners held a hearing on a complaint against respondent, Fred W. Phelps, Sr. It filed its report, findings and recommendations on February 12, 1979. The action is before this court pursuant to Supreme Court Rule 212 (224 Kan. lxxxvi-lxxxvii; old rule No. 213, 223 Kan. lxxxiv).

The facts out of which respondent's violations arose are as follows: On May 31, 1974, a preliminary hearing was held in Division One of the Magistrate Court of Shawnee County, Kansas, before Judge Allan A. Hazlett, wherein the State of Kansas was plaintiff and Sherman Robinson was the defendant charged with a felony and represented by R. W. Niederhauser, attorney. Carolene Brady was the court reporter who took the testimony at the hearing.

On July 15, 1974, Mr. Niederhauser attempted to call Carolene Brady to notify her he needed a transcription of the testimony at the Robinson preliminary hearing, but was informed Brady was on vacation and would not return until August 1, 1974. In the meantime, R. W. Niederhauser had employed Fred W. Phelps, Sr. to try the Robinson case.

On July 31, 1974, Carolene Brady returned from her vacation and on August 5, 1974, she was contacted by Niederhauser about transcribing the testimony from the Robinson preliminary hearing. Mrs. Brady advised Mr. Niederhauser at that time that she was working on a transcript for Russell Shultz of Wichita and she would not be able to provide the Robinson transcript by the date Niederhauser desired it, which was August 9, 1974. Brady told Niederhauser if he could obtain a continuance of the trial she would try to complete the transcript by August 13, 1974, and

would call him on August 12, 1974 and report. The continuance to August 13 was obtained.

On August 12, 1974, Brady tried to contact Niederhauser to report she had the testimony dictated onto tape but she couldn't find a typist. Niederhauser was not available when she telephoned so she left word for him to return her call. The call was never returned.

Later on August 12, 1974, Carolene Brady received a telephone call from a female who said she was calling from Phelps' office advising her she'd better have the Robinson transcript ready that day "or else." The person was later identified as Fred Phelps' daughter, Shirley.

Brady next called Fred Phelps, Sr. to notify him, since she couldn't find Niederhauser, that she would be unable to get the testimony typed on time. Phelps responded angrily and told her he had wanted to sue her for a long time. Thereafter, Phelps, on behalf of Robinson, filed a mandamus action in Shawnee County District Court, case No. 125695, and obtained an emergency court order for Carolene Brady to produce the transcribed testimony by 9:00 P.M. August 13, 1974, or to appear August 13, 1974, at 1:30 P.M. and show cause to the contrary. Brady found a Ms. Laird, who picked up the tapes around 4:00 P.M. August 12, 1974, and typed the transcript, taking some 6 hours to complete it. The transcription was delivered to the court at 8:30 A.M. August 13, 1974. Brady appeared at 1:30 P.M. to show cause but no action was taken. Sherman Robinson went to trial on August 14, 1974, and was acquitted.

In spite of the successful termination of the criminal action which set this sequence of events in motion, Robinson or his attorney, Phelps, continued to pursue the mandamus action and, in addition, filed a damage suit against Carolene Brady for fraud and misrepresentation, designated as case No. 125742, in the District Court of Shawnee County, Kansas. The petitioner prayed for $2,000.00 actual damages and $20,000.00 punitive damages.

Case No. 125742, the damage suit, was set for trial December 16, 1976, before a jury of six, lasting 8 days. It resulted in a verdict for Carolene Brady. Case No. 125695, the mandamus action, was tried at the same time but to the court. It also resulted in a verdict for Brady.

In both trials, Fred Phelps, Sr. represented Sherman Robinson

and tried the case. Fred Phelps, Jr. assisted. The case appeared to be Phelps' personal case. He called the defendant, Carolene Brady, as his witness, had her declared hostile, then proceeded to cross-examine her for 3 or 4 full days. The record discloses that his cross-examination was abusive, repetitive, irrelevant, and represented a classic case of "badgering" a witness. Then he had the temerity to complain that Brady cried in the presence of the jury. Throughout the trial, Phelps made attempt after attempt to adduce testimony concerning Carolene Brady's reputation for truth and veracity, her reputation for competency, the falsification of her income tax return and her morality, or lack thereof.

It is clear from our examination of the record and transcripts in that case that the trial was a personal vendetta by Fred Phelps, Sr. against Carolene Brady. The jury verdict didn't stop the onslaught of Phelps. He was not satisfied with the hurt, pain and damage he had visited on Carolene Brady. He filed a motion for a new trial, the controversial part of which is herewith set out in full:

"1. Erroneous rulings by the Court as follows:

(a) Rejecting the proffered testimony of R. W. Niederhauser, F. G. Manzanares, Jess Danner and Richard Waters as follows: That Messrs. Niederhauser and Manzanares qualified as practicing attorneys to have an opinion as to the conduct of defendant herein, assuming all relevant facts taken in their best light for plaintiff and construed most favorably to plaintiff, that they in fact had an opinion, and that in their opinion defendant's conduct herein was reckless. With regard to the testimony of Jess Danner and Richard Waters, that they qualified as certified court reporters to have an opinion as to the conduct of defendant herein, assuming all relevant facts taken in their best light for plaintiff and construed most favorably to plaintiff, that they in fact had an opinion, and that in their opinion defendant's conduct herein was reckless. Rejecting Niederhauser July 15 and August 1 telephone conversations with one identifying herself as speaking for defendant.

(b) In rejecting the proffered testimony of Ralph J. Hiett, B. L. Pringle, Patrick Connolly, Dan Turner, Dick Brewster, Rodney Joyce, Patrick Brady, Kathy Fitzgerald and Karen Kennedy, as follows: That each such person had relevant knowledge of the defendant Brady, knew her reputation in the community for truth and veracity, and that such reputation was bad; further, that from their knowledge in the community they had an opinion as to the truthfulness and veracity of defendant, and as to the attitude of defendant toward her oath or other solemn obligation to speak the truth and be bound by any such oath or solemn judicial obligation, and that in their opinion defendant was not a truthful person and had scant regard toward her oath or any such solemn obligation; and further, that they had knowledge of specific instances of conduct by defendant including but not limited to the conduct of defendant when employed as the court reporter

for two separate grand jury investigations in Shawnee County, and wherein the defendant Brady had a sworn duty not to reveal such grand jury proceedings to outsiders, and to maintain all such proceedings in strict secrecy, and notwithstanding such bounden and solemn duty under the law, the defendant Brady repeatedly 'leaked' knowledge of such proceedings to certain of those being investigated by such grand jury and who were later indicted by such grand jury including but not limited to: Morris 'Pete' Peterson; Gary Guerrero; Peggy Guerrero; the brother of Governor Robert Docking; and others connected to the so-called 'architectural kickback case'; and further included but not limited to the conduct of defendant in 'leaking' two confidential transcripts taken by Dan Turner in his investigation of a matter involving Bill Glenn, such statements being sworn statements of Kathy Fitzgerald and Karen Kennedy, which statements were taken in secrecy and for which the defendant was bound to secrecy and which were delivered by Mrs. Brady to the news media and consequently published in violation of her solemn oath and duty. Rejecting Appendix 'C' in connection with such proffer.

(c) In rejecting the proffered testimony of Patrick Brady, former husband of the defendant Brady, to the effect that the three children of the defendant, Mike, Karen and Laurie, were in fact living with him (Patrick Brady) and away from the defendant Brady during the years 1974 and 1975, the very years when the defendant Brady swore on her oath to the United States government and the State of Kansas on income tax returns admitted as evidence in this case that each of said three children were in fact living with the defendant Brady in 1974 and 1975 and that the defendant Brady was therefore entitled to claim each of said three children as her personal exemptions for said years, and further, that custody of the son of the parties, Mike, changed from the defendant Brady to Patrick Brady in 1973, and since that time, the son Mike has been living with Patrick rather than the defendant, and that the only remaining minor child of the parties, Laurie, is now in the custody of Patrick Brady and all in contradiction to the sworn testimony of the defendant Brady and constituting substantial impeachment of the defendant Brady and having strong probative value in the instant case going to the critical question of whether Mrs. Brady or Mr. Niederhauser was telling the truth on vital questions of evidence."

The defendant, Carolene Brady, responded to Phelps' motion for a new trial by obtaining and filing affidavits from eight of the witnesses, listed by Phelps, showing they would not testify as Phelps indicated they would. The motion for a new trial was denied and the case was appealed to the Court of Appeals where the judgment of the trial court was affirmed February 17, 1978.

After Phelps had appealed *Robinson v. Brady* to the Court of Appeals, he filed documents to the trial court entitled, "Plaintiff's Reply Affidavits to Defendant's Post-Trial and Post-Appeal Affidavits." The content of the affidavits was so scurrilous that the Court of Appeals ordered its copies expunged as of the date of the opinion and the trial court later expunged its copies from the

record on November 22, 1978. In spite of the court's order of expungement, Phelps attached two of these affidavits to the reply brief filed with this court in the present case, thus successfully making them public documents. These affidavits cast reflections on Carolene Brady's character, wholly outside the issues of either the mandamus action or the fraud and misrepresentation case.

The facts of the case against Carolene Brady were brought to the attention of Arno Windscheffel, the disciplinary administrator, and a formal complaint was filed against Fred W. Phelps, Sr., on November 8, 1977. The complaint alleges the respondent made his proffers of testimony during the *Robinson v. Brady* trial and filed a motion for new trial asserting certain individuals would testify in a certain way as to Carolene Brady's reputation for truth and veracity, for competency and reckless conduct, attitude toward her oath and obligation and for keeping a secret. Further, the complaint noted the affidavits filed by the eight witnesses stating they would not testify as asserted in the motion for new trial. Finally, the complaint alleged Phelps had "[N]o reasonable basis for asserting that the . . . named persons would testify in the manner in which he contends . . . some of the named individuals had told Phelps that they would not so testify."

Respondent answered denying the allegations of the complaint that he made proffers of testimony which were not true and correct to the best of his knowledge, belief and understanding.

A pretrial conference was held February 9, 1978, where the issues were defined as follows:

"3. The panel chairman then states it is his opinion and he rules that the issue in this case is as to whether the Respondent made false statements to the court in his proffered testimony and in his Motion for a New Trial when the Respondent referred to his knowledge of and the nature of the testimony which would be presented by the witnesses named in Paragraphs 1a, 1b and 1c of the complaint. The panel chairman further rules that the issue of the ultimate truth of the proffered testimony is not before the hearing panel but the question is as to whether or not Fred Phelps knowingly made false statements of law or fact as to the testimony of the proffered witnesses; more particularly the issues will be as to whether or not the Respondent violated

1. His oath as an attorney
2. DR1-102A4 - 'Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation'
3. Did he violate DR1-102A5 - 'Engage in Conduct that is Prejudicial to the Administration of Justice' and
4. Did he violate DR7-102A5 - 'Knowingly Make False Statement of Fact or Law' and

5. Did he violate Kansas Statute, KSA 60-211 when he affixed his signature to the Motion for a New Trial?"

The disciplinary hearing before the panel was held March 13, 14 and 15, 1978, with trial briefs submitted June 1, 1978. The panel made the following findings:

"The Respondent seeks to vindicate his written Motion for a New Trial by an interpretation of the motion to the effect that not all persons named would testify to all the proffers (TR-527) but that some would testify to each element. The Panel concludes this is a strained construction and interpretation of the writing. Had the Respondent so intended when he wrote the motion, he could easily have used language that would have expressly set forth what each witness would offer in testimony. The Respondent elected to 'lump' the names and proffers and the posthumous explanation is not accepted by the Panel.

"The Panel recognizes that in the trial of a case things may be said inadvertently. Also, we note that the reading of the transcript of the trial of Robinson v. Brady makes it difficult to get the full or true meaning of statements by counsel and of ruling by the court. However, the written Motion for a New Trial is of a different character. Here the Respondent was in the quiet of his office; he has spoken with the witness and has been advised by them as to what they will and will not testify; he has opportunity to confer with his co-counsel and with his investigator and informant. At that time he could have and should have taken steps to make certain that his 'proffers' were in fact correct. This would not have been difficult. For example, the Respondent had himself talked to several of the named witnesses and had been personally advised by certain of the witnesses that they could not and would not testify in the manner or to the things set forth in the motion.

"An inquiry to the investigator would have disclosed that (1) he made no written reports of his interviews and that some of the interviews were conducted in 1973 (Tr-418). (2) That Kathleen Fitzgerald had no direct information as to who may have 'leaked' testimony of a secret nature (Tr-419-420). (3) That the informant and investigator had never personally talked to Patrick Brady or Joyce (Tr-423) but he did talk to Joyce by phone and Joyce declined to talk about the reputation of Brady (Tr-424). (4) That he last talked to Joyce in 1973 (Tr-425) and to Brewster in 1973 (Tr-425).

"At the meeting of Respondent and his co-counsel on or about January 2, 1977, when the Motion for a New Trial was prepared, the Respondent knew that certain of the witnesses would not testify as orally proffered, but he made no mention of that fact and in fact prepared and signed the motion with that knowledge in mind.

"Tr-430 (testimony relating to the preparation of the Motion for a New Trial)

'Q. At that time did Mr. Phelps advise you or say anything to you or Mr. Niederhauser or anything that you heard that he had information that Pringle, Connolly, Brewster, Turner and Brady would not so testify as was stated in here?

A. (By Hiett) No.'

"A lawyer is an officer of the court and owes a duty to the court and to his client. DR 1-102 states:

'A lawyer shall not

(4)   Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'

"The Panel finds that the Respondent knew that the witnesses named in the Motion for a New Trial would not each testify as the motion states. This information was made known to the Respondent personally by some of the named witnesses. Further, because of the Respondent's personal involvement in other prior cases and investigations, the Respondent, as an attorney, had a duty to check his sources of information, the accuracy of the information, and the possible prejudice of the informant. The Respondent ignored the warning signals and his own personal knowledge and the Panel finds that his conduct in signing and filing the Motion for a New Trial constitutes a violation of DR 1-102(A)(4) and also a violation of DR 1-102(A)(5) in that he did engage in conduct that is prejudicial to the administration of justice.

"A lawyer is an advocate and he has a duty to represent his client zealously. But, he must do so within the bounds of the law. DR 7-102 states:

'A - In his representation of a client, a lawyer shall not

(5)   Knowingly make false statements of law or fact.'

"The Panel finds that the Respondent had personal knowledge prior to the time the oral proffers were made and prior to the time the written Motion was filed that some or all of the named witnesses would not testify in the manner and to the things as stated in the proffers and in the Motion for a New Trial. It is apparent to the Panel that the Respondent was relying on innuendos and deductions and the hope that the witnesses, if called to the stand, might change their testimony. But the Respondent does not so state in his proffers or in the motion. The Respondent chose to ignore the direct testimony he had personally received and to accept the statements of his investigator and informant. The Panel finds that the Respondent did knowingly make false statements of fact and did violate DR 7-102(A)(5).

"The Panel further finds that when the Respondent signed the Motion for a New Trial, he knew of his own knowledge that certain of the statements therein made were not true and that the witnesses would not so testify and that by signing the pleading he thereby violated KSA 60-211, and that the signing of the Motion by the Respondent was a wilful act.

"Beyond these specific findings, the testimony in this case and the reference to prior related cases disclose a course of conduct by the Respondent that indicates the Respondent may have ceased to be an advocate for his client and may be embarked upon a personal vendetta against some persons and is using his position as a lawyer as a weapon. We do not make such a specific finding. However, we do call the attention of the Respondent to DR 7-102 (a) [*sic*] (1):

'In his representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows that such action would serve merely to harass or maliciously injure another.'

We merely suggest to the Respondent that he might well take a critical look at his tactics and policy and procedures in his utilization of his license as a lawyer and answer truthfully to himself the question - 'Am I fulfilling my duty as a lawyer?'

"The Panel has received and has reviewed and studied the briefs prepared and filed by counsel for the State and counsel for the Respondent. They are most

helpful. Unfortunately, there are not many decided cases upon the points we are now considering. Most of the cases deal with the application of Federal Rule 11, our KSA 60-211. The case of Miller v. Schweickart, 413F Supp (1059) (1061) (USDC-SDNY-1976) is cited by both counsel and thoroughly dissected. It involved a complaint in a class action and the Court said

'Lawyers have a responsibility before subscribing their name to complaints which contain serious charges to ascertain that a reasonable basis exists for the allegations, even if they are made on information and belief — Unverified hearsay based on rumor is not sufficient upon which to subject one to the burdens of complex litigation and heavy legal costs. (underlining added)'

We recognize this case is not directly in point for it refers to a complaint and not a motion or subsidiary pleading. But, we are of the opinion the wording is peculiarly applicable to this case. The Respondent contends he did have a reasonable basis for his allegations, namely a co-counsel, his investigator and informant, and a third party. But, the inferences and innuendos and conclusions of those parties had been directly controverted by certain of the witnesses named by the Respondent in his Motion for a New Trial. The Respondent chose to ignore the direct negation by the witness, of which he had personal knowledge, and based his affidavit upon the erroneous information given to him by those whom he chose to believe.

"We point out that KSA 60-211, which refers to pleadings is made applicable to all 'motions and other papers' by KSA 60-207(B). See also Fed Rule 11 and 7 and U.S. ex rel Foster Wheeler Corp v. American Surety Co. 25 F Supp 225 (EDNY-1938) and Wright & Miller Fed Practice & Procedure, Vol 5, Par 1332.

"And in the article 'Honesty in Pleading and its Enforcement' by D. Michael Risinger, Minnesota Law Review - 1976, Vol 61, Page 1 of his conclusion, the author states with respect to Rule 11 (KSA 60-211)

'Rule 11 seeks to obtain honesty in pleadings by requiring the signature of an attorney and by requiring that there be good ground to support the document signed. Good ground cannot exist as to any alleged proposition known to be false, including a denial; further, an attorney must engage in reasonable investigation to determine the probability of any proposition he proposes to allege in a pleading or other document. (underlining added)'

"We cannot accept the Respondent's argument of 'reasonable basis' when certain of the named witnesses had personally advised the Respondent that they had no knowledge or information on the matters sought to be elicited or that they would not testify as stated by the Respondent in the affidavit.

"We have also considered Respondent's procedural objections and contentions. In our opinion the issue is not whether the trial court was misled but rather is whether the Respondent knowingly made false statements to the Court in his Motion for a New Trial, and we have found from the evidence that the Respondent did knowingly make such false statements."

We have said a disciplinary action is more serious than a civil action, *State v. Johnson,* 219 Kan. 160, 546 P.2d 1320 (1976), and charges must be established by substantial, clear, convincing and satisfactory evidence. *State v. Hoover,* 223 Kan. 385, 574 P.2d 1377 (1978); *State v. Johnson,* 219 Kan. 160. In addition, it is well

established the Board's findings and recommendations are advisory only and are not binding on the court. *State v. Johnson; In re Phelps,* 204 Kan. 16, 459 P.2d 172 (1969), *cert. denied* 397 U.S. 916 (1970). This court has the duty in a disciplinary action to examine the evidence and determine for ourselves the judgment to be entered. *State v. Klassen,* 207 Kan. 414, 485 P.2d 1295 (1971).

We have carefully and painstakingly reviewed the voluminous transcripts and exhibits and conclude there is clear and convincing evidence to support the panel's finding that the respondent violated: DR 1-102(A)(4); DR 1-102(A)(5); DR 7-102(A)(5); and K.S.A. 60-211.

In addition, a study of the transcripts, particularly that of the trial of *Robinson v. Brady,* convinces us that Fred W. Phelps, Sr. meant it when he told Carolene Brady he had wanted to sue her for a long time. The trial became an exhibition of a personal vendetta by Phelps against Carolene Brady. His examination was replete with repetition, badgering, innuendo, belligerence, irrelevant and immaterial matter evidencing only a desire to hurt and destroy the defendant. We note the panel's discussion of DR 7-102(A)(1) and its observation that the record and testimony show "a course of conduct by the Respondent that indicates the Respondent *may* have ceased to be an advocate for his client and *may* be embarked upon a personal vendetta against some persons and is using his position as a lawyer as a weapon." (Emphasis added.) The panel declined to make such a specific finding. We, however, are not bound by the failure to make such a finding. The formal complaint lodged against Phelps states: "That the Motion for New Trial (Attached J) clearly misrepresents the truth to the court and holds a defendant up to unnecessary public ridicule for which there is no basis in fact." We have examined the record and transcripts from *Robinson v. Brady,* which were made exhibits by the panel and are properly before this court as part of the record in the disciplinary case. This record unquestionably supports a finding that Phelps' action in filing the motion for new trial attempted to hold Mrs. Brady up to unnecessary public ridicule. Additionally, we find the entire record before us clearly supports a violation of DR 7-102(A)(1).

Respondent claims he was denied due process when the panel denied his motion for discovery. We find the panel's ruling

correct. The panel hearing is a type of discovery, with lenient rules to permit respondent to present any defense he might have to the complaint. Respondent relies upon *Brotsky v. State Bar,* 57 Cal. 2d 287, 368 P.2d 697, 19 Cal. Rptr. 153 (1962), to support his claim. This case, however, recognizes the existence of a California state statute allowing discovery in this type of proceeding. See Cal. Bus. & Prof. Code § 6085 (West). Kansas law is distinguishable because we have no statutory requirements for discovery under such circumstances. Additionally, we note with approval a recent Indiana case holding denial of discovery in a disciplinary proceeding is not an unconstitutional denial of due process. *Matter of Murray,* 266 Ind. 221, 362 N.E.2d 128 (1977). We find the respondent had proper notice of the nature and extent of the complaint and that the hearing was fairly and properly conducted by the panel.

Respondent argues his motion for a new trial and allegations therein referring to proffered evidence are no more than a normal proffer. We do not agree. An oral proffer during the course of a trial is made for the purpose of preserving the record. K.S.A. 60-243(c). The reference to witnesses and their testimony in a motion for a new trial is an attorney's representation to the court that a new trial should be granted because of the quality of proof available. The motion is prepared in the attorney's office and should be carefully and studiously drafted. It is an attorney's representation to the court and is contemplated by K.S.A. 60-211.

The final determination for the court is the proper discipline for respondent's violations of the Code of Professional Responsibility. In this regard, we note it is proper to consider an attorney's previous record concerning professional conduct. *State ex rel. Okl. Bar Ass'n v. Hensley,* 560 P.2d 567 (Okla. 1977). See also *Selznick v. State Bar,* 16 Cal. 3d 704, 547 P.2d 1388, 129 Cal. Rptr. 108 (1976). Phelps was suspended from practicing law for a period of two years for unprofessional conduct in 1969. *In re Phelps,* 204 Kan. 16. The seriousness of the present case coupled with his previous record leads this court to the conclusion that respondent has little regard for the ethics of his profession. In his attorney's oath, Fred W. Phelps, Sr. swore as follows:

"You do solemnly swear that you will support and bear true allegiance to the Constitution of the United States and the Constitution of the State of Kansas; that you will neither delay nor deny any man his right through malice, for lucre, or from any unworthy desire; that you will not knowingly foster or promote, or give

your assent to any fraudulent, groundless or unjust suit; that you will neither do, nor consent to the doing of any falsehood in court; and that you will discharge your duties as an attorney and counselor of the Supreme Court and all inferior courts of the State of Kansas with fidelity both to the court and to your cause, and to the best of your knowledge and ability. So help you God." Rule No. 702 (*h*) (224 Kan. cxxxviii).

He has disregarded that oath, and violated the Code of Professional Responsibility and K.S.A. 60-211. The practice of law is a privilege rather than a right and by his conduct, respondent has forfeited his privilege. We find he should be disciplined by disbarment and assessed the costs of this action.

BY ORDER OF THE COURT, dated this 20th day of July, 1979.