No. 51,950
No. 52,195

STATE OF KANSAS, *Petitioner,* v. MAX REGIER, *Respondent.*

(621 P.2d 431)

Opinion filed December 6, 1980.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*Max Regier* appeared pro se and was on the brief for the respondent.

*Per Curiam:* This opinion consolidates two original actions in discipline numbered 52,195 and 51,950 brought against Kansas attorney Max Regier. The actions are before this court pursuant to Supreme Court Rule No. 212 (228 Kan. adv. sheet No. 1, vi-vii). Each complaint and ensuing disciplinary action will be discussed separately.

The facts which gave rise to the complaints are as follows. In June, 1974, Regier represented Charles Dvorak, who was charged with aggravated sodomy. Jury trial was held October 23, 1974, and Dvorak was convicted and sentenced to a term of 15 years to life. Dvorak was released on appeal bond and notice of appeal was filed by Regier on December 26, 1974. The appeal was not docketed in the Supreme Court until April 21, 1976. After several extensions, no brief had been filed by December 1, 1976 and the State moved to dismiss the appeal. On December 6, 1976, Regier filed a motion to suspend Supreme Court proceedings for thirty days in order for the trial court to determine whether fraud had occurred during trial. The State's motion to dismiss was denied and the motion to suspend was granted.

Regier first suspected Dvorak had committed fraud when he represented him on two unrelated charges in October, 1975. In the aggravated sodomy case, the victim testified the attacker had a very hairy chest and no marks, scars or tatoos. While testifying in his own defense, Dvorak removed his shirt to reveal the absence of hair on his chest and the presence of markings. Regier testified he believed Dvorak committed fraud by shaving the hair on his chest. Regier's investigator confirmed his suspicions and he contends he met with Dvorak regarding the suspected perjury during August to December, 1976. Dvorak denies the conversations took

place. Two hearing dates were set for January and February, 1977, to investigate the possibility of fraud, but postponements were granted and no hearings were rescheduled. Upon the district attorney's motion, the appeal bond was vacated, the appeal was dismissed and Dvorak was sentenced to Lansing.

The record in Dvorak's case reveals no indication Regier withdrew from his representation of the defendant after he suspected fraud and actively sought court investigation. Regier admits he intended to withdraw only if his suspicions of fraud were substantiated.

The hearing panel found clear and convincing evidence that Regier's actions constituted misconduct and a violation of DR 4-101 because Regier, through his own initiative and during the existence of the attorney-client relationship, became aware of certain facts which would be detrimental to his client if revealed. He then revealed that information to two district judges. The hearing panel found the information to be a "confidence," protected by the attorney-client privilege, which did not fall within the exception of DR 4-101(C). Additionally, the formal complaint alleged improper perfection of Dvorak's appeal, although the panel report did not find a specific violation resulting from that conduct. The panel recommended Regier be indefinitely suspended from further practice of law.

The second complaint was initiated by Regier's former client Frances Pederson, now Frances Eastman. Eastman lived with Larry Pederson for approximately a year and a half. In December, 1975, Pederson filed a replevin action against Eastman to recover personal property she was alleged to have in her possession. She consulted Regier who advised her she should initiate divorce proceedings to dissolve her alleged common-law marriage and resolve the personal property dispute. A petition for divorce was filed February 10, 1976. On December 10, 1976, a conference was held at the Sedgwick County Court House regarding the distribution of personal property belonging to Eastman and Pederson. Eastman testified she did not personally appear before the judge, but negotiations between Regier and Pederson's attorney, Michael Silver, took place in the hall outside the courtroom. The Journal Entry in the Eastman-Pederson case filed by Silver on September 30, 1977, ordered Eastman to pay legal fees in the amount of $600. It was agreed that Regier was to forward to Silver

half the money he received from Eastman, but no agreement was reached as to the method of payment. Eastman contends she sent $475 in checks to Regier and a $30 cash payment. Regier testified his records showed Eastman paid him $450 in checks and he denied receiving the cash payment. He admitted he failed to forward any of the money to Silver as agreed but stated he was trying to protect his own fees because he had represented some of the family in prior years and had had some difficulty recovering a fee. The money Eastman sent to Regier was divided up and half was placed in an envelope and attached to her file kept in Regier's office.

In June, 1979, Silver contacted Regier, indicating he intended to file a garnishment action against Eastman to recover his fee. Regier told him he had the money and requested the action not be filed. Silver called him a few days later and told him the garnishment papers had gone out of his office without his knowledge. The garnishment action was filed June 12, 1979, and Silver recovered $54.15 from Eastman's salary. Eastman was reprimanded by her employer and she eventually filed a complaint against Regier with the Wichita Bar Association. During the hearing, Regier admitted he kept money collected on behalf of his clients in cash form attached to the client's file and did not maintain a bank account for client funds.

The report of the hearing panel dated May 2, 1980, found Regier had mishandled his client's funds in violation of DR 9-102(A). This is based upon Regier's failure to properly disburse Eastman's funds and the commingling of a portion of the last check Eastman sent. In addition, the panel found Regier had violated DR 6-101(A) because of his overall handling of the Eastman-Pederson divorce action. The panel recommended disbarment in light of these findings and Regier's past conduct.

With respect to the Dvorak complaint, we find insufficient evidence to support the panel's finding that Regier violated DR 4-101 by revealing secrets or confidences of his client. DR 4-101(A) states " 'confidence' refers to information protected by the attorney-client privilege under applicable law . . . ." K.S.A. 60-426 governs this privilege and it requires the matter be a communication "between lawyer and his or her client in the course of that relationship and in professional confidence . . . ." K.S.A. 60-426(b). DR 4-101(A) defines a "se-

cret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Kansas law defines secrets as follows:

"[I]t must be of a confidential character, and so regarded, at least by the client, at the time [of the disclosure], and must relate to a matter which is in its nature private and properly the subject of a confidential disclosure." *City of Wichita v. Chapman,* 214 Kan. 575, 582, 521 P.2d 589 (1974).

Regier disclosed to the court that he believed his client had removed hair from his chest at the time of his appearance at the sodomy trial, as supported by his agent's observations. This disclosure is not a confidential communication protected by the attorney-client privilege. Hair is a physical characteristic and a display of plaintiff's chest hair could be compelled. *United States v. Dionisio,* 410 U.S. 1, 35 L.Ed.2d 67, 93 S.Ct. 764 (1973).

Further, although the definition of "secrets" is broader than that of confidences (see Callan and David, *Disclosure of Client Misconduct,* 29 Rutgers Rev. 332, 352-353 [1976]) we do not find Regier's disclosure to fall within its reach. The disclosure here involves a physical characteristic rather than a confidential communication. The defendant's chest was displayed in court. Its appearance on that day and on subsequent days is not, in this instance, a secret which the attorney has a duty to hold in confidence.

We are more concerned with Regier's handling of the Dvorak appeal. Appellee's first motion to dismiss, filed December 1, 1976, was denied December 6, 1976. On the same date appellant's motion to suspend was granted. A second motion to dismiss was filed by appellee on August 11, 1977, and the unopposed motion was granted September 12, 1977. Appellant's pro se motion to reinstate the appeal was filed September 21, 1978, the State responded on October 10, 1978, and appellant's motion was denied November 1, 1978.

DR 7-101(A)(2) and (3) state:

"A lawyer shall not intentionally:

. . . .

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 7-105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required by DR 7-102(B)."

Regier clearly failed to carry out the appeal services for which he was hired. His actions regarding the suspected fraud should not have precluded the appeal. DR 7-101(A)(3) does not require termination of the attorney-client relationship when a lawyer takes action regarding past fraud under DR 7-102(B). Furthermore, in pursuing the appeal, DR 7-101(B)(2) allows an attorney to abandon an alleged error urged by his client, if he believes such conduct would be unlawful. Regier is in violation of DR 6-101(A)(3) which prohibits a lawyer from neglecting a legal matter entrusted to him.

With regard to the Eastman complaint, appellant contends the hearing panel goes beyond the formal complaint and respondent had no opportunity to defend himself against the charges not mentioned in the complaint. The formal complaint charged Regier with mishandling funds in violation of DR 9-102(A). In addition to a finding that DR 9-102(A) was violated, the panel found a violation of DR 6-101(A) arising from Regier's handling of the Eastman-Pederson divorce.

It is well established that an attorney is charged with knowledge of the disciplinary rules regulating his or her profession. *State v. Alvey,* 215 Kan. 460, 524 P.2d 747 (1974). Additionally,

" '[W]here the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. It is not required that the complaint contain a reference to the specific canon of ethics which may have been violated.' " *State v. Turner,* 217 Kan. 574, 579-580, 538 P.2d 966 (1975).

*State v. Alvey,* 215 Kan. at 464; *State v. Nelson,* 206 Kan. 154, 476 P.2d 240 (1970).

The formal complaint in this case related Regier's actions with respect to the divorce proceeding and the agreement that Regier would forward to Silver his portion of Eastman's payment of attorney fees. The complaint alleged Regier had failed to maintain a separate client's account as required by DR 9-102(A). This information constitutes sufficient notice of the basic factual situation out of which respondent could expect to be the subject of discipline.

Respondent argues the hearing panel's recommendation of disbarment is too severe. Regier admits he is probably guilty of failing to properly disburse the funds in his possession, but

believes public censure would suffice in this case. Disbarment was recommended in light of respondent's past record (see *State v. Phelps,* 226 Kan. 371, 598 P.2d 180 [1979], *cert. denied* 444 U.S. 1045 [1980]) and because of the panel's findings in the Dvorak matter, which was pending before this court at the time the Eastman complaint was heard by the panel.

A review of Regier's past record reveals he voluntarily surrendered his license to practice law on June 1, 1963. His first application for reinstatement was denied and a second was filed January 5, 1970. He was readmitted to the practice of law on June 24, 1970. This court is not bound by the findings and recommendations of the panel and we will examine the evidence and determine for ourselves the judgment to be entered. *State v. Phelps,* 226 Kan. at 379. We have considered Regier's prior disciplinary record, his action in the Dvorak complaint in neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3) and his action in the Pederson complaint of failing to maintain a separate client's account as required by DR 9-102(A). We find his record and these infractions, cumulatively, serious enough to justify strict punishment but we find the panel's recommendation of disbarment overly severe. We therefore find Max Regier should be suspended from the practice of law for an indefinite period. The costs of this action are assessed to the respondent.

IT IS SO ORDERED THIS 6th day of December, 1980.