No. 52,377

State of Kansas, *Petitioner,* v. Phillip Leon, *Respondent.*

(621 P.2d 1016)

Opinion filed January 17, 1981.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*Fred A. Beaty,* of Wichita, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is a disciplinary action against attorney Phillip Leon arising from a complaint initiated by his former client, Carolyn Winn. The disciplinary hearing panel found Leon in violation of DR 7-101 and DR 6-101 and recommended he be indefinitely suspended from the practice of law. The respondent filed exceptions to the report of the hearing panel.

Phillip Leon represented Carolyn Hoyle, now Winn, in a divorce action against Jim W. Hoyle. The Hoyles had no children and amicably agreed to a division of their property and debts. Hoyle waived notice and consented to an immediate hearing of the petition which was filed on July 1, 1977. The divorce was granted the same day on an emergency basis. Hoyle did not appear. There was no controversy. The journal entry ordered the parties to make monthly payments of $56 to the court to apply on a note to I.S.C., now Beneficial Finance Co., Augusta, Kansas. The note was signed by both parties and neither party was a creditor of the other.

After the divorce, with Winn's consent, respondent represented Jim Hoyle on various matters including the annulment of Hoyle's subsequent marriage. Respondent also advised Hoyle with regard to his rental property, performed legal work for Hoyle's mother, and counseled Hoyle concerning the potential inheritance of his mother's property. Hoyle met with respondent on the average of twice a month.

On September 24, 1978, Winn contacted respondent concerning her steadily deteriorating financial condition. She had been in the hospital and lost her job due to illness. Respondent advised her to file a bankruptcy action since she owed secured creditors $4204 and unsecured creditors the sum of $5111.38 and had assets of only $2750. Included in the unsecured category was the debt to Beneficial Finance mentioned in the divorce settlement. It

was a joint and several obligation of both parties. Winn's obligation to the court on the I.S.C. note was not listed in the bankruptcy proceedings. The bankruptcy action was prepared in September, 1978, but not filed until April 3, 1979. Winn agreed to pay a fee of $150. The first meeting of creditors was held April 30, 1979, at which time Winn gave respondent a post-dated check for one-half the attorney fee. Winn had no further contact with respondent until she received a letter from him dated July 16, 1979, stating he had been retained by Hoyle to pursue a contempt action against her for not having made her part of the payments on the I.S.C. account as ordered by the divorce decree. Respondent also requested the balance of his fee for the bankruptcy action. Winn was discharged in bankruptcy on October 17, 1979.

Respondent did not pursue the threatened contempt action against Winn but the action was subsequently filed by other counsel for Hoyle. On May 6, 1980, the contempt action against Winn was heard by Judge Ron Rogg. The court found Winn's obligation on the I.S.C. debt listed in the divorce decree was still owing and the court ordered Winn to reimburse Hoyle in the amount of $1020.50. The court found Winn not guilty of indirect contempt. Following her receipt of the letter from respondent, Winn filed a complaint with the Wichita Bar Association alleging respondent had violated the Code of Professional Responsibility. A formal complaint was filed by the Disciplinary Administrator and a hearing was held in Wichita on June 9, 1980. The panel found respondent in violation of DR 7-101, "by accepting employment by Jim Hoyle in a matter affecting a different client, Mrs. Winn, from whom respondent first accepted employment," and DR 6-101, "by reason of the failure of Phillip Leon to competently advise his client, Mrs. Winn, of the legal effect of an action (bankruptcy) which he was retained and paid to advise Mrs. Winn concerning and to handle." The panel recommended respondent be suspended from the practice of law.

DR 6-101 states:

"(A) A lawyer shall not:
  (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
  (2) Handle a legal matter without preparation adequate in the circumstances.
  (3) Neglect a legal matter entrusted to him."

We find the State failed to prove a violation of DR 6-101 by clear and convincing evidence. *State v. Phelps,* 226 Kan. 371, 378, 598 P.2d 180 (1979), *cert. denied* 444 U.S. 1045 (1980). Mrs. Winn and Jim Hoyle both executed the note to I.S.C. They were jointly and severally liable for the debt. If, prior to the discharge in bankruptcy, Hoyle had defaulted, I.S.C. could look to Winn for the entire debt. The bankruptcy proceeding removed her obligation to I.S.C. on that note. Her obligation to the court, however, is enforceable by contempt and cannot be removed by bankruptcy. Respondent correctly omitted Hoyle from the bankruptcy action.

DR 7-101 provides:

"(A) A lawyer shall not intentionally:
  (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
  (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
  (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
(B) In his representation of a client, a lawyer may:
  (1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.
  (2) Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal."

Respondent admits he wrote the July 16, 1979, letter to Mrs. Winn stating he had been retained by Hoyle to cite her for contempt but claims Hoyle's continual harassment regarding the I.S.C. debt prompted him to warn Winn what could happen if she didn't pay her half of the debt. Respondent asserts he was not actually retained, he received no fee and he filed nothing on Hoyle's behalf. Respondent places himself on the "horns of dilemma." He was either retained as he stated in the letter or he made a false statement. Either action is unacceptable conduct for a lawyer and deserves punishment.

The findings and recommendations of the hearing panel or Board are advisory only and are not binding on this court. We

have the duty to examine the evidence and determine the judgment to be entered. *State v. Regier,* 228 Kan. 746, 621 P.2d 431 (1980). In determining the discipline to be invoked, it is proper to consider an attorney's past record of professional conduct. *State v. Phelps,* 226 Kan. 371. Leon has been before this court on another disciplinary matter. He was found in violation of DR 9-102 because he "commingled child support payments with his personal funds, thus depriving a client of funds to which she was lawfully entitled for an unreasonable time." *In re Leon,* 224 Kan. 613, 584 P.2d 1255 (1978).

We have considered respondent's record of misconduct and find the current violation of DR 7-101 coupled with that record necessitate punishment by public censure.

IT IS BY THE COURT SO ORDERED this 17th day of January, 1981.