OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which found appellant, Jeffrey J. Helmick, in civil contempt under R.C. 2705.02 and fined him $25 per day until he complied with a court order which directed him to comply with a grand jury subpoena. Appellant sets forth the following assignment of error:
 "The trial court erred to Mr. Helmick's prej udice be (sic) directing that he reveal client secrets in direct violation of the express language of the Code of Professional Responsibility."
The following facts are relevant to this appeal.[1]
Appellant was lead counsel for a criminal defendant. An investigator working on the mitigation aspect of the case informed appellant that the investigator had obtained a letter from the defendant's mother written by the defendant to his brother. The investigator provided the letter to appellant. Appellant discussed the letter's content with his co-counsel and then consulted with the disciplinary counsel for the Ohio Supreme Court's Committee on Grievance and Discipline who opined that appellant was obligated to report the matter and that all counsel were obligated to withdraw as counsel. Appellant contacted the judge presiding on the case and complied with the judge's order to read the letter over the telephone. The judge reported the matter to the police. Appellant also spoke with a detective about the letter. As a result, the state is aware of the contents of the letter, the identity of the persons who are threatened or possibly threatened, the persons who are or might be involved in the threats and the method by which any possible threat might be enacted.
The trial court quashed a grand jury subpoena ducestecum issued on February 12, 1998. A second grand jury subpoenaduces tecum issued. The trial court denied a motion to quash the second grand jury subpoena and on March 10, 1998, orally directed appellant to comply with the grand jury subpoena. Appellant declined to do so. On March 25, 1998, the trial court held a show cause hearing and held appellant in civil contempt under R.C. 2705.02 and directed him to pay an ongoing, daily civil fine until compliance with the court order. The sanction was ordered stayed pending this appeal.
Appellant's argument is that complying with the court order would require him to violate the Ohio Code of Professional Responsibility ("Code").[2] Appellant's argument is based upon DR 4-101, entitled Preservation of Confidences and Secrets of a Client, which provides that a lawyer shall not knowingly reveal a confidence or secret of his client.[3] A "confidence" is "information protected by the attorney-client privilege under applicable law" [DR 4-101(A)] and, thus, is not applicable in this case. See, fn. 2. A "secret" is "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101(A). The "other information" is in distinction to information that is protected by the attorney-client privilege. It is the "secret" classification which appellant argues applies in the case subjudice. This court could find no Ohio cases on point.[4]
Appellant argues that he followed the discretion provided by DR 4-101(C) when he informed the trial court of the apparent intention of his client to commit a crime and the information necessary to prevent the possible crime. In support of his argument that forced disclosure of this "secret" would violate the public policies that animate the Code, appellant quoted the following from Purcell v. District Attorney for theSuffolk District (Mass. 1997), 676 N.E.2d 436, 440:
 "The testimony that the prosecution seeks from [defense counsel] Purcell is available only because Purcell reflectively made a disclosure, relying on this court's disciplinary rule which permitted him to do so. Purcell was under no ethical duty to disclose [his client's] intention to commit a crime. He did so to protect the lives and property of others, a purpose that underlies a lawyer's discretionary right stated in the disciplinary rule. The limited facts in the record strongly suggest that Purcell's dis closures to the police served the beneficial public purpose on which the disciplinary rule was based.
 "We must be cautious in permitting the use of client communications that a lawyer has revealed only because of a threat to others. Lawyers will be reluctant to come forward if they know that the information that they disclose may lead to adverse consequences to their clients. A practice of the use of such disclosures might prompt a lawyer to warn a client in advance that the disclosure of certain information may not be held in confiden[ce], thereby chilling free discourse between lawyer and client and reducing the prospect that the lawyer will learn of a serious threat to the well-being of others."
Although this court agrees with the sentiment expressed by the Massachusetts Supreme Court, the Purcell case is clearly distinguishable from the case sub judice. In Purcell, the trial court denied a motion to quash a subpoena and ordered the attorney to testify at his former client's criminal trial about a conversation the attorney had with his client, the substance of which the attorney had communicated to the police because the client had indicated his intention to commit arson. The Massachusetts Supreme Court vacated the trial court's order, concluding that the crime-fraud exception[5], upon which the trial court had based its decision, did not apply to the case.
In the case sub judice, appellant was ordered to turn over to the grand jury a document, a letter written by the defendant to his brother. Appellant was not ordered to disclose a conversation with his client or to disclose an act or conduct performed by his client in appellant's presence, either of which would be protected by the attorney-client privilege.
Additionally, although appellant argues that he should not be required to turn over the letter because it is a client secret, appellant does not cite any case which supports his position that the letter is a "secret" as that term is used in DR 4-101. Although unable to locate any Ohio case on point[6], this court finds the following quote from Burkoff, Criminal Defense Ethics (Rev.Ed 1996) 6-111, § 6.5(h), fn. 296, instructive:
 "While physical evidence would appear not to be a `secret' under DR 4-101(A), the disclosure of its existence or whereabouts when it had been obtained from the client or as a result of confidential communications from the client would cause an attorney to violate DR 4-101(B)(2), `us[ing] a confidence or secret of his client to the disadvantage of the client.' * * *" (Emphasis added.)
In the case sub judice, the letter was not "obtained from the client or as a result of confidential communications from the client" and, thus, no argument can be made that appellant would violate DR 4-101(B)(2) if he relinquished the letter. Furthermore, in cases in which client "secrets" and their disclosure have been at issue, the "secrets" have been information
gained during the professional relationship. For example, in InThe Matter of the Discipline of Two Attorneys (Mass. 1996),660 N.E.2d 1093, 1096, two attorneys were disciplined with an informal admonition for use of secrets when they used information that they obtained from their buyer-clients concerning the date and place of the closing, the seller's name, the purchase price and net proceeds of the sale of real estate for the advantage of their creditor-client. In In The Matter of the Disciplinary Proceedingv. McMurray (Wash. 1983), 665 P.2d 1352, 1353, although other charges were involved, an attorney was disciplined, in part, for violation of use of client secrets. The attorney used information he had gained in his professional relationship with one client while defending her on a DWI charge while representing another client against assault charges brought by the first client. To discredit the first client's testimony during cross-examination, the attorney sought to impeach her character by exposing her marital problems and the fact that while married, she lived with someone else.
In another case, Kansas v. Regier (Kan. 1980),621 P.2d 431, 434, the Supreme Court of Kansas found insufficient evidence to support a disciplinary panel's finding that an attorney violated DR 4-101 when the attorney disclosed to the court that his client had removed hair from his chest at the time of his appearance at a trial. In the trial, the victim had testified that the attacker had a very hairy chest. Id. at 433. The court concluded hair is a physical characteristic which is neither a confidence or a secret. Id. at 434.
In Byrne v. Stephan (Kan. 1988), 1988 U.S. Dist. LEXIS 1510, an attorney transmitted two sealed letters to his criminal client's mother and brother which the imprisoned client had told the attorney contained information of a confidential nature relating to the client's defense strategy and a request for the client's relatives to transmit specified information for his defense. The attorney later learned the letters did not concern the client's defense but requested help in effectuating an escape from prison; in conformance with DR 4-101(C), the attorney informed prison officials of the possible flight. A bar complaint was initiated against the attorney for violation of a Kansas statute which included "communication or writing" within the definition of prohibited contraband which could not be removed from a prison without obtaining consent of a warden. In response to the bar complaint, a state ethics investigator concluded that although the attorney's acts were in technical violation of the statute, the attorney had acted in good faith in transmitting the letters for his client because the attorney believed that the letters contained confidences or secrets as defined in DR 4-101. The attorney challenged, under the Sixth Amendment right to counsel, the constitutionality of the statute. The attorney also argued that, because an attorney is compelled under the statute to at least partially reveal confidential communications to a third person, the warden, he would be subject to a violation of the ethical code. In response to the ethical code argument, the district court stated: "* * * This situation is not presented in this case, because the communication here was not a confidence or secret. The communication was an escape plan, a matter which an attorney has an ethical obligation to reveal to proper authorities. * * *"
Accordingly, this court concludes that the letter in the case sub judice is not a secret within the parameters of DR 4-101(A).
In addition to finding that the letter does not come within the parameters of a DR 4-101(A) client secret, other provisions of the code support the argument that appellant should relinquish the letter to the grand jury. DR 7-109(A) provides that "[a] lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal or produce." DR 7-102(A)(3) provides that "[i]n his representation of a client, a lawyer shall not * * *[c]onceal or knowingly fail to disclose that which he is required by law to reveal." In order to apply the "legal obligation to reveal or produce" [DR 7-109(A)] or the "required by law to reveal" [DR 7-102(A)(3)] approach to the casesub judice, this court must first address the subpoena powers of the grand jury. This court concludes, after a review of the history and purpose of the grand jury, that appellant must relinquish the letter.
The United States Supreme Court in United States v.Calandra (1974), 414 U.S. 338, 342-344, set forth the following in regard to the historical basis for the grand jury:
 "The institution of the grand jury is deeply rooted in Anglo-American history. In England, the grand jury served for centuries both as a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and as a protector of citizens against arbitrary and oppressive governmental action. In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by `a presentment or indictment of a Grand Jury.' (Citation omitted.) The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions. (Citation omitted.)
 "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical, procedural and evidentiary rules governing the conduct of criminal trials. `It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or fore casts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' (Citation omitted.) The scope of the grand jury's powers reflects its special role in insuring fair and effective law enforcement. A grand jury proceed ing is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged. (Citations omitted.)" (Footnotes omitted.) (Emphasis added.)
As noted by the appellate court in State v. Washington (1978),56 Ohio App.2d 129, 141:
 "* * * The grand jury's purpose is to sift the evidence and to detect therefrom if it is sufficient to reasonably conclude that there is probable cause to believe that the accused committed an offense. * * *" See, also, State v. Asher (1996), 112 Ohio App.3d 646.
In In re Klausmeyer (1970), 24 Ohio St.2d 143, paragraph three of the syllabus, the Ohio Supreme Court held:
 "A grand jury may compel the appearance of witnesses, may compel the presentation to it of documents, and may compel witnesses to testify on matters under investigation. (R. C. Chapter 2939.)"
In Branzburg v. Hayes (1972), 408 U.S. 665, 682 and 688, in declining to create a testimonial privilege under the First Amendment for news people regarding their confidential sources, the United States Supreme Court stated:
 "* * * Citizens generally are not constitution ally immune from grand jury subpoenas; neither the First Amendment nor any other constitutional provisions protects the average citizen from disclosing to a grand jury information that he has received in confidence. * * *
"* * *
 "* * * [T]he grand jury's authority to subpoena witnesses is not only historic (citation omitted) but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that `the public * * * has a right to every man's evidence,' except those persons protected by a constitutional, common-law, or statutory privilege, (citations omitted) is particularly applicable to grand jury proceedings." (Footnotes omitted.)
This court concludes that no constitutional[7], common-law[8], or statutory privilege[9] applies to preclude the relinquishment of the letter to the grand jury.[10]
This court also agrees with the following quote fromHitch v. Pima Cty. Superior Court (Ariz. 1985), 708 P.2d 72,77-78:
 "* * * We have stated that `[t]he duty of an attorney to a client * * * is subordinate to his responsibility for the due and proper administration of justice. In case of conflict, the former must yield to the latter.' (Citation omitted) * * *"
Based upon the above, this court believes that when a grand jury issues a subpoena duces tecum to an attorney to obtain a document authored by a client to which no constitutional, common-law or statutory privilege applies, that attorney has an ethical obligation to relinquish that document to the grand jury.
Accordingly, appellant's assignment of error is found not well-taken.
Although the trial court in this case stayed the sanctions pending appellate review, there is case law to support vacation of the trial court sanctions. In a case involving an attorney's refusal to disclose information under the attorney-client privilege and the confidentiality requirements of the code, the Washington Supreme Court stated:
 "When an attorney makes a claim of privilege in good faith, the proper course is for the trial court to stay all sanctions for con tempt pending appellate review of the issue. Accordingly, we vacate the finding of con tempt against [the law firm] contingent on their answering the Church's questions
 regarding [the client's] legal fees within 30 days of issuance of the mandate in this case." Seventh Elect Church in Israel v. Rogers (Wash. 1984), 688 P.2d 506, 512.
See, also, State v. Sheppard (Wash.App. 1988), 763 P.2d 1232,1236 (Although trial court stayed all sanctions of contempt pending appellate review, the appellate court vacated the order finding attorney in contempt, contingent upon answering the questions.)
Furthermore, this court agrees with the opinion expressed by the Supreme Court of Oregon in State v. Keenan (Or. 1989), 771 P.2d 244, 245:
 "* * * Even without imposition or enforcement of a sanction, an outstanding judgment that a lawyer has committed contempt of court can have future legal consequences for the lawyer, for instance in subsequent disciplinary proceedings in some unrelated matter. * * *"
This court believes, when, as in the case sub judice, an attorney makes a good faith claim under the Code in an unsettled or tested area of professional ethics, he or she should not be penalized. Indeed, appellant should be commended for his professional and ethical behavior in a very difficult situation. Not only did appellant, after wisely seeking advice from the disciplinary counsel for the Ohio Supreme Court's Committee on Grievance and Discipline, properly notify both the court and the police about the contents of the client's letter but also, in both the trial court and this court, he endeavored to determine the appropriate parameters of the Code that, in this jurisdiction, were to date undefined.
Accordingly, this court vacates the finding of contempt against appellant contingent on either (1) his filing of a notice of appeal to the Ohio Supreme Court or (2) his relinquishment of the letter to the grand jury within forty-five days of issuance of the mandate in this case. If the Ohio Supreme Court denies appellant leave to appeal, appellant will have thirty days from the date of that denial to relinquish the letter to the grand jury. If the Ohio Supreme Court grants appellant leave to appeal, this court vacates the finding of contempt until that Court renders its decision.
On consideration whereof, the court affirms, in part, and reverses, in part, the judgment of the Lucas County Court of Common Pleas. It is ordered that the parties share equally the court costs for this appeal.
JUDGMENT AFFIRMED, IN PART,
 AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 Peter M. Handwork, P.J.___________________________________ JUDGE
 Melvin L. Resnick, J.______________________________________ JUDGE
 James R. Sherck, J.________________________________________ JUDGE
CONCUR.
[1] The facts are from a joint stipulation of facts filed by the parties in regard to appellant's second motion to quash.
[2] In the trial court, appellant had argued that both work-product and attorney-client privilege were applicable. Neither is applicable in this case.
The letter is clearly not work-product as the letter was not prepared by an advocate in anticipation of litigation. The letter was written by the defendant, not to his attorney, but to the defendant's brother. Therefore, relinquishing the letter would not involve revealing work-product.
The attorney-client privilege is a privilege of confidentiality accorded communications between a client and his attorney. The classic statement of the privilege is found in United States v.United Shoe Machinery Corp. (Mass. D.C. 1950) 89 F. Supp. 357
in which it was stated that the privilege applies only if 1) the asserted holder of the privilege is or sought to be a client; 2) the person to whom the communication was made a) is a member of the bar of a court, or his subordinate and b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was in formed a) by his client b) without the presence of strangers c) for the purposes of securing primarily either i) an opinion on law or ii) legal services or iii) assistance in some legal proceeding, and not d) for the purpose of committing a crime or tort; and 4) the privilege has been a) claimed and b) not waived by the client.
The letter was not "a communication made to the attorney by a client" as the letter was from the defendant to his brother. Thus, on that ground alone, the letter would not fall within the attorney-client privilege.
[3] DR 4-101(B) and (C) provide:
 "(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
"(1) Reveal a confidence or secret of his client.
 "(2) Use a confidence or secret of his client to the disadvantage of a client.
 "(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
"(C) A lawyer may reveal:
 "(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
 "(2) Confidences or secrets when permitted under Disciplinary Rule or required by law or court order.
 "(3) The intention of his client to commit a crime and the information necessary to prevent the crime."
[4] Although two recent Ohio Supreme Court cases involved the crime-fraud exception to the attorney-client privilege, those cases provide little guidance in this case. In State ex rel. Nixv. Cleveland (1998), 83 Ohio St.3d 379, 380, relators requested to inspect correspondence between the law department and any other attorney in regard to a wiretapping case relators had commenced. Respondents argued that certain records were exempt from disclosure based on the attorney-client privilege. The court stated:
 "A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud. (Citations omitted.) `A privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society.' A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. (Citation omitted.) The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege. (Citation omitted.)
In State ex rel. Abner v. Elliott (1999), 85 Ohio St.3d 11, the Ohio Supreme Court upheld the appellate court dismissal of a writ of prohibition which sought to prevent the trial judge from enforcing his discovery orders seeking an en camera inspection of witness preparation material. Plaintiffs' attorneys had claimed the witness preparation material were protected from disclosure by attorney work product and attorney-client privilege. At issue in the trial court was whether the witness preparation material had been used for improper preparation or coaching of witnesses in asbestos litigation.
[5] The Massachusetts Supreme Court stated the following definition of the crime-fraud exception:
 "A statement of an intention to commit a crime made in the course of seeking legal advice is protected by the [attorney-client] privilege, unless the crime-fraud exception applies. That exception applies only if the client or prospective client seeks advice or assistance in furtherance of criminal con duct." Id. at 440.
[6] In People v. Lopez (Colo. 1993), 845 P.2d 1153, the Supreme Court of Colorado concluded that an attorney's misconduct warranted a public censure, in part, because the attorney gave the prosecution an eight page document that the attorney had requested the client prepare outlining the criminal client's version of the events underlying the felony charges against him. The Lopez court based its decision on DR 4-101(B)(1). Id. at 1155. In concluding that a public censure was warranted, the Lopez court also based its decision on the fact that the attorney had submitted false and misleading statements during the disciplinary process. Id.
The Lopez case, however, is clearly distinguishable from the case sub judice in that, at the attorney's request, the client had prepared the document regarding the charges pending against the client for the attorney's use in defending the client. Id. at 1154. The Lopez document contained admissions by the client of his participation in the events underlying the felony charges against him. Id. Although the Lopez court noted that the attorney's disclosure of the document caused no actual injury in that the prosecution did not use the document to impeach or cross-examine the client, the court stated: "However, the [attorney's] unlawful disclosure of his client's confidence
created a very real potential for injury." (Emphasis added.) Id.
at 1155. Because the document was prepared for the attorney's use by the client, the document was clearly protected by the attorney-client privilege. Id.
In the case sub judice, the letter was not prepared at the attorney's request for the attorney's use regarding the charges pending against the client. Rather, the letter was written by the client on his own. Thus, because the letter was not written at the attorney's request for the attorney's use regarding the charges pending against the client, no discussion of the confidence portion of DR 4-101(B)(1), as discussed by theLopez court, Id. at 1155, is necessary.
[7] See, Fisher v. United States (1976), 425 U.S. 391;United States v. Doe (1984), 465 U.S. 605 (contents of subpoenaed documents were not privileged under the Fifth Amendment since the Fifth Amendment protects the person asserting the privilege from compelled incrimination and the documents themselves were not prepared involuntarily).
[8] See, Fisher v. United States (1976), 425 U.S. 391 (Two part test to determine if attorney-client privilege applicable:
(1) were documents submitted to attorney on a confidential basis to obtain legal advice and (2) were documents privileged in client's hands by reason of Fifth Amendment); In re Arnold McDowell (1983), 566 F. Supp. 752 (Documents containing direct personal communications between attorney and client fall within attorney-client privilege but documents prepared by clients and pertaining only to effectuation of real estate transaction itself do not fall within privilege.)
[9] See, fn. 2 and fn. 8 for discussion regarding inapplicability of the attorney-client privilege in this case.
[10] The facts as stipulated to by the parties state:
 "16. [Appellant] told [the detective] the salient facts contained in the letter so that [the detective] could understand the nature, severity, and the breadth of the threat rep resented by and contained in the letter.
 "17. Based upon [appellant's] discussion with [the detective], the State is generally aware of the contents of the letter, the information in the letter that would tend to identify the person or persons who are threatened, or possibly threatened, by the letter, information in the letter that would tend to identify the persons other than the author who are or might be involved in such threat, and of the method by which any possible threat might be enacted."
From the use of certain phrases in the stipulated facts, i.e. "the nature, severity, and the breadth of the threat represented by and contained in the latter;" "the person or persons * * * threatened;" and "the persons other than the author who are or might be involved in such threat", it could be inferred that the letter in the case sub judice contains information regarding a possible crime.