No. 46,753

STATE OF KANSAS, *Petitioner*, v. ALBERT O. KIESOW, *Respondent*.

(502 P. 2d 623)

Opinion filed November 4, 1972.

*Curt T. Schneider*, Assistant Attorney General, argued the cause, and *Vern Miller*, Attorney General, was with him on the brief for the petitioner.

*Albert O. Kiesow*, of Kansas City, argued the cause, and was on the brief *pro se.*

*Per Curiam:* This is an original proceeding in discipline. The respondent, Albert O. Kiesow, has been a member of the bar practicing in Wyandotte County since 1949. This proceeding arose from two complaints received by the State Board of Law Examiners concerning the professional conduct of the respondent. After investigation and hearing the state board filed its report which contained its findings and recommendation of indefinite suspension. Respondent filed exceptions to the report of the state board and the matter is now before this court for determination.

The first two charges of alleged misconduct involve solicitation of business and the misuse of a client's funds, arising from an attorney-client relationship between Mr. Kiesow and Mr. and Mrs. Carl Sheppard during 1970. The factual circumstances are not really in dispute and are basically as follows: On December 10, 1969, Donald Sheppard, the 22-year-old son of Mr. and Mrs. Carl A. Sheppard was fatally injured by electricity. In August of 1970 the respondent, Kiesow, was in La Cygne, Kansas, on real estate business. The client, who was a neighbor of Mr. and Mrs. Sheppard, discussed with respondent the accidental death of Donald Sheppard. The client suggested that respondent should go to see Mr. Sheppard about it. The respondent approached the Sheppards and suggested to them the possibility of a lawsuit against the Kansas City Power and Light Company, whose electrical lines caused the electrocution death of their son. Mr. and Mrs. Sheppard had given no previous consideration to a possible claim. They did not know the respondent and did not request that he call upon them. Respondent advised the Sheppards that there was some possible liability on the part of

the power company and they agreed to employ him to proceed with the claim against the power company on a 50% contingent fee contract. These circumstances gave rise to the charge of solicitation of business.

The second charge involves misuse of a client's funds in the course of respondent's representation of the Sheppards in processing their claim against the power company. The respondent negotiated a settlement of the Sheppards' claim with the Kansas City Power and Light Company for the sum of $3,000. The settlement draft was drawn to the order of both respondent and the Sheppards. Respondent obtained the endorsement of the Sheppards on the settlement draft with the understanding that respondent would send his personal check for their portion of the settlement which would be $1500. Respondent testified that he told the Sheppards that it would take about 10 days for the draft to clear. He deposited the draft in his account at Rosedale State Bank which respondent characterized as a "clients' account." The settlement draft was paid by the bank on August 18, 1970. On the same date respondent transmitted to the Sheppards by letter his check in the amount of $1500 drawn on the Rosedale State Bank. Sheppard presented respondent's check for payment to the Rosedale State Bank but it was not paid because of insufficient funds. The Sheppards made several unsuccessful attempts to reach the respondent. Some time after Labor Day respondent advised the Sheppards, "There's not a thing I can do now. I've got some money coming in in a few days." Finally on October 8, 1970, a complaint was filed with the Kansas Bar Association by Mr. and Mrs. Sheppard. On November 3, 1970, after answering the complaint the respondent sent the Sheppards a certified check for the amount due. It is undisputed that respondent used the Rosedale State Bank account for his own use under the assumption that "there should have been some profit in the account." While respondent maintained that he deposited the full $3,000 in the account, the bank record clearly indicated that only $2300 was deposited. The evidence established that respondent had no means of identifying the various accounts on deposit, as he maintained no service account ledger that would separate client's funds and office funds. His personal funds and the client's funds were not separated.

On the basis of this evidence the State Board of Law Examiners found that the first two charges involving solicitation and misuse

of a client's funds had been proved. More specifically as to the solicitation charge the state board found that the client did not seek the services of the respondent attorney and that the best that can be said is that respondent called at the suggestion of a neighbor who had no motive for personal gain. We agree with the state board that the situation is governed by Supreme Court Rule No. 501 DR 2-104 (A), 205 Kan. lxxxi, which reads as follows:

"A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, . . .".

It is clear that respondent was guilty of professional misconduct in violation of this provision. This court has long recognized that improper solicitation by an attorney warrants disciplinary action. (*In re Gorsuch,* 113 Kan. 380, 214 Pac. 794.)

As to the charge of misuse of a client's funds the state board found that respondent had wrongfully used the funds of his clients for his own purposes when he knew or should have known that he was doing so and further that he commingled the clients' funds with his personal or business funds.

This court in the case of *State v. Barrett,* 207 Kan. 178, 483 P. 2d 1106, defines commingling as follows:

"Commingling is committed when a client's money is intermingled with that of his attorney and its separate identity lost so that it may be used for the attorney's personal or business expenses or subjected to claims of his creditors." (p. 182.)

The respondent admitted to procrastination but denied any intent to defraud on his part. The state board found that there was no intent to defraud on the part of respondent. The state board specifically concluded that the respondent should not escape responsibility for his trust account obligation by his failure to keep records or data as required to enable him to discharge his duties to his clients. The practice of commingling clients' funds with the personal and business funds of the attorney so that the separate identity of the clients' money is lost is a violation of the canons of professional ethics. (Supreme Court Rule No. 501 DR 9-102, 205 Kan. xcii.) Likewise, the failure of respondent promptly to pay to his clients the settlement funds to which they were entitled is also a violation of the same rule. It should also be noted that the respondent did not pay to the Sheppards their share of the settlement until after a complaint had been filed with the Kansas Bar Association by the Sheppards. The undisputed evidence makes it

clear that respondent was guilty of professional misconduct in the misuse of his clients' funds.

The third complaint concerns a check in the amount of $2,603.10 paid as a condemnation award in a highway condemnation case. Briefly stated, the State Highway Commission condemned a portion of real estate belonging to the estate of one Robert T. Smith and Corene Smith, a widow. Robert T. Smith died on July 11, 1963. The $2,603.10 was paid into the office of the clerk of the district court of Wyandotte County on February 3, 1965, which money was not withdrawn. In September 1966, the respondent Albert O. Kiesow bought the remaining Smith real estate at a tax foreclosure sale. The sale was confirmed and a sheriff's deed was issued to Mr. Kiesow. Somehow Kiesow discovered that the Smiths had failed to draw down the condemnation award and that the $2,603.10 remained in the hands of the clerk of the court. It is clear from the evidence that the land which respondent purchased at the tax sale did not include the land previously condemned. Respondent, in order to obtain the award money, solicited the approval of Judge William J. Burns of the district court and the approval of J. W. Mahoney, attorney for the State Highway Commission, to obtain an order of distribution. The order allowed respondent to draw down the $2,603.10 for his own use. No formal hearing was had on respondent's motion to withdraw the money nor did respondent attempt to give notice to the heirs of Robert T. Smith or to Corene Smith. The whole matter was handled by Judge Burns on the understanding that he was signing an agreed journal entry and that all interested parties had consented thereto. It further does not appear that respondent fully explained to Judge Burns or J. W. Mahoney how respondent came to be the owner of the land. The action of the respondent in obtaining the condemnation money was discovered by the United States Attorney when he attempted to have the balance due on a first mortgage held by the United States paid out of the monies which had been deposited with the clerk. Subsequently, Corene Smith and the United States filed motions to require Mr. Kiesow to reimburse the clerk of the district court for the money he had wrongfully withdrawn. The motions were sustained and respondent was ordered to reimburse the clerk; thereafter respondent restored the funds to the clerk with interest. The respondent's explanation as to why he was entitled to the money was that he had a sheriff's deed to the remaining land and he concluded that no one else had any right to the money. The

State Board of Law Examiners found that the respondent, knowingly or with ignorance inexcusable in a competent lawyer, sought personal gain at the expense of litigants not actively represented by counsel at a hearing affecting their substantial rights. It further found that the respondent did not make a full disclosure to the court and counsel in obtaining entry of the order of disbursement and took advantage of their confidence in him and their inattention to the true nature of the order sought. The state board further found that respondent, with dishonest intent, sought to and did exploit his status as a lawyer to obtain funds for his personal use to which he had no right. The state board concluded that respondent did not conduct himself with the honesty, candor and fairness commanded by Canon 11, Canons of Professional Ethics, as then in force and by Supreme Court Rule Nos. 501 DR 7-102 (A), DR 7-106 and DR 1-102 (A) (4) and (6), 205 Kan. lxxxvii-lxxxviii-lxxvii.

It is clear to this court and we find that respondent was guilty of professional misconduct in the manner in which he obtained withdrawal of the highway condemnation funds heretofore discussed.

The hearing panel recommended to the State Board of Law Examiners that the respondent be disciplined by indefinite suspension. The same recommendation was made by the state board to this court. We accept that recommendation.

On the basis of the record before us we have concluded that respondent has been guilty of a disregard of his duties of honesty, fidelity, candor and fairness which he owed to his clients and to the courts. From the record before us we note that respondent has suffered extremely poor health and consequent financial reverses during the past few years. This was probably an important contributing factor to the unfortunate circumstances involved in this present proceeding. We find at this time that respondent is an unfit person to manage the legal business of others which justifies the imposition of indefinite suspension.

It is therefore the judgment and order of this court that the respondent Albert O. Kiesow be indefinitely suspended from the practice of law from the date of this opinion and that he pay the costs of this proceeding.

IT IS SO ORDERED.

Owsley, J., not participating.