No. 52,736

STATE OF KANSAS, *Petitioner,* v. ROBERT FREEMAN, *Respondent.*

(629 P.2d 716)

*Arno Windscheffel,* disciplinary administrator, argued the cause and *Roger N. Walter,* disciplinary counsel, was on the brief for the State of Kansas.

*W. E. Woodard, Jr.,* of Wichita, argued the cause and was on the brief for Robert Freeman.

*Per Curiam:* This is a disciplinary proceeding against Robert R. Freeman, a Kansas attorney. Respondent filed exceptions to the report of the Kansas Board for Discipline of Attorneys which recommended Freeman be indefinitely suspended from the practice of law for violation of DR 1-102(A)(4) and (6) and DR 9-102(B)(3) and (4).

The facts are undisputed. Sheila D. Hoffner is a school teacher and a resident of Brewster. She inherited eight quarters of farm land in Thomas County from her parents, which she and her husband managed through 1976. Thereafter, Mrs. Hoffner experienced marital problems which resulted in the execution of a property settlement agreement. Ultimately, the Hoffners were divorced. She received five quarters of the land by the terms of the agreement. On January 22, 1977, because of her health, Sheila Hoffner placed her five quarters of land in a revocable trust.

Under the terms of the trust, Mrs. Hoffner as settlor, is the sole beneficiary of the trust for her lifetime. She is entitled to all of the income and she is authorized to invade the corpus of the trust upon request. The trust instrument designates Sheila D. Hoffner and Robert R. Freeman as co-trustees. Upon the death of Sheila Hoffner, the trust income then is to be paid to Irene Aspinwall and Robert R. Freeman, Hoffner's cousins, share and share alike for their lives. At the death of Irene Aspinwall and Robert R. Freeman, the land is to be sold and the proceeds divided on a per capita basis among the ten children of Aspinwall and Freeman.

Sheila Hoffner leased the trust property to local farmers and used the rental income to supplement her teacher's salary. She became dissatisfied with the meager rent she received and began to search for professional farm management advice. Through her stepson, Larry Hoffner, Mrs. Hoffner met Douglas Moon, agent for the Hutchinson National Bank Farm Management Depart-

ment. On January 22, 1980, she entered into a farm management agreement with the bank on behalf of her trust.

Pursuant to the agreement, the bank designed a program to increase the trust income by increasing the sprinkler irrigation systems on the farm. To finance the proposed improvements Mrs. Hoffner obtained an $80,000 loan from the Federal Land Bank on behalf of the trust. One quarter section of the trust land was mortgaged to secure the loan. The Federal Land Bank disbursed $75,200 of the loan to Sheila D. Hoffner by draft on May 2, 1980. Five percent of the loan was held back and invested in Land Bank stock according to standard practices. As soon as the Federal Land Bank loan was committed, the bank contracted for the improvements to the irrigation system which consisted of $31,500 to Western Well and Pump, $22,000 to Jack Roore Well and Drilling, $5,762 to First National Leasing. A balance of $15,738 was to be held in reserve at the Hutchinson National Bank for further development work at a later date.

Robert Freeman, as co-trustee of the Hoffner trust, was fully informed of the farm management plan for capital improvements. He approved of the plans and the method of financing them. There is also evidence respondent knew the specific amounts owed to each contractor from the loan proceeds.

Sheila Hoffner received the Federal Land Bank draft in the amount of $75,200 on May 3, 1980. She intended to endorse it and mail it directly to the Hutchinson National Bank for disbursement to the contractors, but Freeman intervened and inquired if she had received the draft. Respondent requested Mrs. Hoffner to endorse it and send it to him. He told her he would deliver the draft to the bank and discuss the bank's plans for investing the $15,738 in reserve funds. Sheila Hoffner trusted her cousin and co-trustee and complied with his request. Respondent did not deliver the draft to the bank as represented but instead deposited the draft in his individual trust account in the Farmers and Merchants National Bank of Derby. In the latter part of May, the bank farm management personnel discovered the loan proceeds had not been received. Creditors were demanding payment. The bank called and requested that the draft be delivered. Freeman told them the money would be forthcoming in a day or two. After learning of respondent's actions, Larry Hoffner called Freeman and inquired why the funds had not been remitted. Respondent

gave no explanation but assured him the funds would be forthcoming. From May until early June, 1980, Larry Hoffner made repeated calls to respondent inquiring about the funds. He was always assured the money would be forthcoming.

On June 10, 1980, respondent remitted $30,000 of the $75,200 to the bank and gave the bank repeated assurances that the remaining funds would be remitted immediately. Finally, on June 25, 1980, Larry Hoffner filed a complaint against respondent with the disciplinary administrator. A formal hearing was held by a disciplinary panel on November 6, 1980, at which time respondent had not remitted the $45,200 balance to the bank or Mrs. Hoffner. At the hearing, respondent admitted he had withheld the funds but claimed he was not subject to attorney discipline because he was acting as trustee, not as an attorney, and that it was a matter between Sheila Hoffner and him. He admitted he converted $5,000 to his own use but refused to reveal the purpose of the conversion. He steadily maintained he used the $40,200 to establish a line of credit which would be available to the trust by paying off personal loans on real estate held in his name.

The hearing panel found respondent in violation of DR 1-102(A)(4) and (6) which provide:

"A lawyer shall not:

. . . .

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

and DR 9-102(B)(3) and (4), which provide:

"A lawyer shall:

. . . .

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

Respondent believes his actions are perfectly justifiable under the terms of the trust instrument itself. Freeman relies on the following trust provisions to justify his actions:

"1. To retain indefinitely any investments and to invest and reinvest in stocks,

shares and obligations of corporations, or unincorporated associations or trusts and of investment companies, or in a common trust fund without giving notice to any beneficiary, or in any other kind of personal or real property, notwithstanding the fact that any or all of the investments made or retained are of character or size which but for this express authority would not be considered proper for trustees;

. . . .

"4. To hold bonds, shares or other securities in bearer form, or in the name of trustees or in the name of one or more but less than all of the trustees or in the name of a nominee, without indication of any fiduciary capacity; to deposit cash in a checking or savings account in a bank, without indication of any fiduciary capacity."

Although we do not believe the foregoing trust provisions excuse respondent's conduct, inasmuch as Freeman's defense is built around his authority as a trustee, we note in passing that he chose to ignore the following paragraph from the trust instrument:

"All powers given to the trustees by this instrument are exercisable by the trustees only in a fiduciary capacity. No power given to the trustees hereunder shall be construed to enable the settlor or any person to purchase, exchange, or otherwise deal with or dispose of the principal or the income therefrom for less than adequate consideration in money or money's worth."

Freeman argues his due process rights were violated because Larry Hoffner, a disinterested third party who was not a party to the trust, initiated the complaint with the disciplinary administrator's office. Respondent argues Larry Hoffner has no standing to enforce the recovery of money supposedly invested in the name of the trust. Respondent does not elaborate on any constitutional violations. Instead, he focuses his argument on the law of trusts. As noted, the trust provisions are not in question here; this is a disciplinary action. "It has been recognized that any interested person may institute a disciplinary proceeding." 7 Am. Jur. 2d, Attorneys at Law § 88, p. 156. The rules relating to the filing of complaints with the disciplinary administrator do not require the complaint be filed by the attorney's client and an investigation may be commenced by the disciplinary administrator with or without an actual complaint. K.S.A. 1980 Supp. 7-124b, Rule 205(c)(2), 209 and 210(a). Finally, we note respondent admitted in his testimony that it is not material whether Sheila Hoffner filed the complaint or not.

Freeman argues the disciplinary proceedings violated his due process rights because there was no attorney-client relationship between him and Sheila Hoffner. Again, respondent does not

provide us with an explanation detailing the violation of his constitutional rights. As for the absence of an attorney-client relationship, we recently held that disciplinary proceedings are not limited to investigating an attorney's action arising from an attorney-client relationship. *State v. Russell,* 227 Kan. 897, 902, 610 P.2d 1122 (1980).

Respondent alleges the disciplinary administrator failed to comply with Supreme Court Rule 210 (225 Kan. lxxxv). The rule allows a disciplinary administrator to refer a complaint to a local bar association grievance committee and allows him to withdraw the referral and have the complaint otherwise investigated. Respondent alleges the disciplinary administrator referred the matter to the Wichita Bar Association on July 1, 1980, but, on September 2, 1980, proceeded to file a formal complaint without having heard from the association and without formally withdrawing the request to investigate the matter. The report of the bar association was received on October 1, 1980, and the disciplinary hearing had already been set for October 20, 1980, on the formal complaint. Therefore, respondent alleges the formal complaint was filed pursuant to false information found in the complaint filed by Larry Hoffner. Rule 210 does not require the disciplinary administrator to wait until he receives the report of the local bar association before he files a formal complaint. Further, respondent does not state which part of Hoffner's complaint is false. We have carefully examined Hoffner's letter, written June 25, 1980, and we find it contains no information respondent has not already admitted. Respondent's argument is without merit.

Finally, respondent argues there is no evidence to support the panel's findings and recommended penalty. He claims he cannot be liable under the terms of the trust which excuses errors of judgment made in good faith. Freeman admits the factual allegations but disagrees with the panel's conclusions regarding improper handling of the money. Respondent knew the loan proceeds were to be paid to those who had expended money on capital improvements for the land in question. He failed to return the $45,200 to Mrs. Hoffner and, by his own admission, at least $5,000—$5,200 went through his personal bank account. Repeated demands were made for return of the money, but to no avail. Respondent admitted he misled both the creditors and

Sheila Hoffner, telling them the bills would be paid, but knowing they would not. Further, Sheila Hoffner, the hearing panel and this court have never been provided with an explanation of the exact whereabouts of the money. Respondent will not reveal an exact account of the business transactions that took place. A disciplinary action is more serious than a civil action and the charges must be established by substantial, clear, convincing and satisfactory evidence. *State v. Phelps,* 226 Kan. 371, 378, 598 P.2d 180 (1979) *cert. denied* 444 U.S. 1045 (1980). There is more than enough clear and convincing evidence to support the panel's findings.

Finally, we turn to the recommended discipline. The hearing panel recommended indefinite suspension; the State argues disbarment is a more appropriate remedy. The findings and recommendations of the hearing panel or Board are advisory only and not binding on this court. We have the duty to examine the evidence and determine the judgment to be entered. *State v. Leon,* 229 Kan. 178, 180-81, 621 P.2d 1016 (1981); *State v. Regier,* 228 Kan. 746, 751, 621 P.2d 431 (1980); *State v. Phelps,* 226 Kan. 371. It has also been stated "[t]he only limitation on punishment is the collective conscience of the court." *State v. Alvey,* 215 Kan. 460, 466, 524 P.2d 747 (1974). However, we have stressed the importance of consistency in the exercise of judicial judgment.

This court takes a dim view of an attorney who commingles a client's money with his or her own and, on occasion, that action has resulted in the imposition of harsh penalties. *State v. Zeigler,* 217 Kan. 748, 538 P.2d 643 (1975); *State v. Mayes,* 216 Kan. 38, 531 P.2d 102 (1975); *State v. Kiesow,* 210 Kan. 549, 502 P.2d 623 (1972). Although Sheila Hoffner was not Freeman's client, respondent's powers were to be used in a fiduciary capacity by the terms of the trust and we find his actions are as reprehensible as if he had been handling the money of a client, to whom he would owe the same fiduciary responsibility. "A lawyer is bound by the Code of Professional Responsibility adopted by rule of this court in every capacity in which the lawyer acts, whether acting as a lawyer or not." *State v. Russell,* 227 Kan. at 902.

In imposing discipline, we must consider not only the evidence of wrongdoing but also any aggravating or mitigating circumstances. *State v. Stakes,* 227 Kan. 711, 720, 608 P.2d 997 (1980). Respondent has taken refuge in his interpretation of the absolute

power of a trustee to a trust. Freeman protests that he is totally unaware of any wrongdoing on his part and displays no indication that he would proceed differently in the future. This lack of recognition of the consequences of his actions, his refusal to turn over the balance of the loan to Sheila Hoffner or explain its whereabouts all act as aggravating factors in this case, prompting this court to order the disbarment of respondent, effective forthwith. The respondent shall pay the costs of this proceeding.

BY ORDER OF THE COURT, dated this 10th day of June, 1981.

HOLMES, J., not participating.