No. 53,302

STATE OF KANSAS, *Petitioner,* v. CHARLES S. SCOTT, SR., *Respondent.*

(639 P.2d 1131)

Opinion filed February 5, 1982.

*Roger N. Walter,* disciplinary counsel, argued the cause and was on the brief for the petitioner.

*Michael A. Barbara,* of Topeka, and *Richard E. Jones,* of Jones & Jones, also of Topeka, argued the cause, and *Chester I. Lewis,* of Wichita, *Elmer C. Jackson, Jr.,* of Kansas City, *Charles Scott, Jr.,* of Scott, Scott, Scott & Scott, and *Michael George,* both of Topeka, were with them on the briefs for the respondent.

*Per Curiam:* Complaint was received in the office of the disciplinary administrator concerning the alleged misconduct of respondent. It involved the failure of Charles S. Scott, Sr., an attorney of Topeka, Kansas, to repay to his client, Margaret L. Dobbyn, cash advancements made by her for a transcript and bond for appeal totaling $3,250.00. After paying this amount to Mr. Scott, Ms. Dobbyn changed her mind within two or three

weeks and advised Mr. Scott she did not wish to pursue the appeal. The transcript of trial proceedings had not been ordered and the advance of $3,000.00 for the same remained in the office expense account of Mr. Scott. The $250.00 for the appeal bond was later returned to Mr. Scott by the clerk and was placed back in his office expense account.

These advancements had been paid to the respondent on May 24, 1978, and June 7, 1978. It was on or around June 13, 1978, when Ms. Dobbyn advised the respondent Mr. Scott that she did not wish to pursue the appeal to the Tenth Circuit Court of Appeals and requested a return of the $3,250.00. In response to this request the respondent advised Ms. Dobbyn that he was drained financially as a result of losing her case in the United States District Court and would like to retain the $3,000.00 for several months. In response, Ms. Dobbyn asked when the respondent could pay it back to her. Respondent advised that it would not be before the last of the month. From her testimony in a deposition Ms. Dobbyn understood that respondent would pay her by the end of the summer. She agreed to this delay.

Respondent failed to repay the money as agreed and after repeated requests for repayment, Ms. Dobbyn consulted an Oklahoma attorney. She was living in Oklahoma. The attorney on behalf of Ms. Dobbyn requested payment from respondent in March, 1979. Payment was not forthcoming and the attorney then made inquiry in June, 1979, through the Kansas Bar Association. The inquiry was referred to the office of the disciplinary administrator and thereafter a complaint was docketed. Subsequent to the institution of this disciplinary proceeding, respondent made full restitution of the $3,250.00 to Ms. Dobbyn.

In July, 1979, Ms. Dobbyn wrote to the disciplinary administrator and informed him she had received a cashier's check in full repayment of the amount due her. She further advised the administrator that the matter was satisfactorily settled and she did not wish to continue with any complaint filed against Mr. Scott. It is generally understood that disciplinary proceedings are not under the control of a complainant and will proceed to hearing despite the desire of the complainant to the contrary. Such proceedings are for the protection and benefit of the public at large and may be instituted and processed on a complaint by the disciplinary administrator. Rule 213, 228 Kan. xcvi, provides:

"Neither unwillingness or neglect of the complainant to sign a complaint or to prosecute a charge, nor settlement or compromise between the complainant and the attorney, nor restitution by the attorney, shall justify abatement of any complaint."

Respondent raises several points which we will address. As his first point he questions the propriety of using the deposition of Margaret L. Dobbyn at the panel hearing. He relies on statutory and case law which recognizes in criminal cases the constitutional right of confrontation and cross-examination.

Although disciplinary proceedings involving attorneys have been characterized as quasi-criminal in cases such as *In re Ruffalo,* 390 U.S. 544, 20 L.Ed.2d 117, 88 S.Ct. 1222, *reh. denied* 391 U.S. 961 (1968), they are a species unto themselves which cannot be characterized as either a civil action or a criminal proceeding. *State v. Holmes,* 218 Kan. 531, 545 P.2d 343 (1976); *In re Rome,* 218 Kan. 198, 542 P.2d 676 (1975); *State v. Russell,* 227 Kan. 897, 610 P.2d 1122, *cert. denied* 449 U.S. 983 (1980). Although the errant attorney may receive punishment, the purpose of these proceedings is primarily for protection of the courts, the legal profession, and the general public from those who have been lacking in professional responsibility. Thus ordinary criminal procedural safeguards do not necessarily apply. *McComb v. Commission on Judicial Performance,* 138 Cal. Rptr. 459, 564 P.2d 1 (1977). The action of this court in exercising its disciplinary authority through the Board for Discipline of Attorneys, although judicial in nature, is in effect an inquiry in the nature of an investigation into the conduct of one of its own officers, the attorney.

The admission of a deposition is expressly provided for by court rule and statutory authority. Rule 216, Rules of the Kansas Supreme Court relating to the Discipline of Attorneys, subpart (f) provides:

"With the approval of the hearing panel, a deposition may be taken by stenographic means or by electronic recording as provided in K.S.A. 60-230 *if the witness is not subject to service of subpoena* or is unable to attend or testify at the hearing because of age, illness or other infirmity. A complete record of the testimony so taken shall be made and preserved." 228 Kan. xcvii. Emphasis supplied.

Rule 211 (d) (228 Kan. xciv-xcv) provides that the formal hearing shall be governed by the Rules of Evidence as set forth in

the Code of Civil Procedure, Art. 4, ch. 60, Kansas Statutes Annotated. Further, Rule 224 (b) provides:

"Except as otherwise provided, the Rules of Civil Procedure apply in disciplinary cases." 228 Kan. ci.

## K.S.A. 60-232 provides:

"(a) *Use of deposition.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

". . . (B) the witness is at a greater distance than 100 miles from the place of trial or hearing, *or is out of the state of Kansas,* unless it appears that the absence of the witness was procured by the party offering the deposition; . . . or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena." Emphasis supplied.

## K.S.A. 60-460 provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . .

"(c) *Depositions and prior testimony.* Subject to the same limitations and objections as though the declarant were testifying in person, (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered . . . ."

## K.S.A. 60-245(e) provides:

"A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place *within the state."* Emphasis supplied.

Supreme Court Rule 216 provides the disciplinary board has the power to subpoena witnesses, subject to the rules of civil procedure. 228 Kan. xcvii.

Ms. Dobbyn, an Oklahoma resident, was not subject to service of a Kansas subpoena. No statutory or other authority existed to compel her attendance at the formal hearing. After receiving the money owed from the respondent, she indicated her unwillingness to cooperate in the prosecution of the proceedings. The above cited section of the statute and this court's rules expressly provide for the taking of Ms. Dobbyn's deposition for use as evidence in the formal hearing. Respondent had ample notice of

the time and place of the deposition, and was thus afforded opportunity for confrontation and cross-examination of Ms. Dobbyn. He elected not to attend the taking of this deposition. He cannot now claim that he was unfairly denied due process. See *State v. Turner,* 217 Kan. 574, 582, 538 P.2d 966 (1975).

We note in passing that the testimony of Ms. Dobbyn in her deposition closely parallels and corroborates the testimony of respondent. It strongly supports the respondent's version of what took place and its admission was in no way prejudicial to respondent.

The respondent next contends there was a good-faith loan made to him by his client and there is no evidence to support a finding of misconduct.

An attorney may arrange and obtain loans from the ordinary lending agencies the same as any other person. However, a lawyer occupies a close confidential relationship with his individual clients. This relationship requires the lawyer to act only in the best interests of the client, and not to take advantage of this confidential relationship which the lawyer must occupy if the client is to be properly represented. Canon 9 of the Code of Professional Responsibility states that a lawyer should avoid even the appearance of professional impropriety. DR 9-102 (B) (4) reads as follows:

"A lawyer shall:

. . . . .

"Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." 228 Kan. cxix-cxx.

There can be no question in this case that the $3,250.00 was paid by the client to the attorney as an advance for costs and expenses of an appeal. Before the transcript expense was actually incurred, the client withdrew from the appeal. The attorney was advised. The money earmarked for transcript and appeal costs belonged to the client. The office account of the respondent contained slightly more than $3,100.00. $250.00 of the amount received from Ms. Dobbyn had been paid as a bond for appeal. So at the time the request for repayment was made, about the middle of June, the respondent could have paid his client the $3,000.00, and the $250.00 could have been refunded after its return from the court clerk.

However, respondent did take advantage of the situation and of his client. Advising her of the fact that he was drained financially because of prosecuting her case, he requested that she defer return of the money. He did not offer to execute a note or other evidence of this indebtedness. He asked to have the amount owed deferred without interest. The client had no independent advice and, even if it was entirely agreeable to her, the transaction had the appearance of professional impropriety at the inception.

Respondent admits that he promised to pay the amount to Ms. Dobbyn by the end of that summer. However, he did not do so. It was more than a year later before the amount was paid. It matters not whether this can be called a loan or an extension of credit, the transaction was improper. *In re George C. Staples,* 259 Or. 406, 486 P.2d 1281 (1971); *The Florida Bar v. Hornbuckle,* 347 S.2d 1030 (Fla. 1977).

In the *Hornbuckle* case an attorney borrowed money from three separate clients and gave each a note and mortgage on his home. The notes were not repaid when due. It was specifically held there was no evidence of intentional deceit or fraud. The attorney was attempting to sell the home in order to satisfy these clients' mortgages. He had been in the practice of law 25 years and no previous complaints had been filed against him. He had enjoyed a good professional reputation prior thereto. The attorney was given a 60-day suspension and a two-year probation with specific requirements attached.

In the *Staples* case the client asked the attorney to invest $18,000.00 for her. The attorney set up a savings account naming himself as trustee. From this account he borrowed money on behalf of a corporation of which he was the majority stockholder. Although the client knew of the loans and even made further loans to this company, she did not have independent advice and did not appreciate the risk involved in this highly speculative business. No evidence of the obligations was delivered and no security was given to her.

The court in *Staples* said:

"An attorney has a fiduciary relationship to his client. *Toomey v. Moore,* 213 Or 422, 430-431, 325 P2d 805 (1958). While it is conceivable that there are circumstances in which it would not be a breach of that fiduciary relationship for an attorney to invest his client's funds in a business which the attorney controls, it is a 'risky business' except with the most financially sophisticated clients. Certainly

the accused's conduct in this case was a breach of that fiduciary relationship. . . .

. . . .

"Borrowing money from a client is the same as a fiduciary contracting with the beneficiary of his trust and is patently improper unless the beneficiary is advised to seek independent advice upon the advisability of entering into such a contract; otherwise, the lawyer is serving two masters, his personal interest and that of his client.

"We find the accused guilty of the charges discussed above.

. . . .

"We are adjudging suspension because borrowing a client's money for the personal advantage of the lawyer, without a most complete disclosure of all the facts and without the client receiving independent advice is only a short step away from embezzlement of the client's funds. For this reason the practice is one from which the public is entitled to the utmost protection." 259 Or. at 409-11.

We wish to point out that in the present case we are not dealing with an attempt to embezzle or convert funds of a client. DR 9-102 (A) in part provides:

"All funds of clients paid to a lawyer or law firm, *other than advances for costs and expenses,* shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein [with certain exceptions not applicable here]." 228 Kan. cxix. Emphasis supplied.

Although it would have been the better practice in this case to have deposited the $3,000.00 advanced for a transcript in a trust account to preserve its identity as the property of a client, this is not required by the terms of DR 9-102 (A). Even though it was large in amount, it was an advance for the expenses of a transcript necessary in the appeal. This fact distinguishes the present case from instances such as that considered in *State v. Freeman,* 229 Kan. 639, 629 P.2d 716 (1981), where an attorney converted or used his client's funds and his actions indicated dishonesty, fraud, deceit, or misrepresentation.

To warrant finding misconduct of an attorney the charges must be established by substantial, clear, convincing, and satisfactory evidence. *State v. Hoover,* 223 Kan. 385, 574 P.2d 1377 (1978). The respondent, Charles S. Scott, Sr., violated Canon 9 of the Code of Professional Responsibility, specifically DR 9-102 (B) (4) which requires the lawyer to promptly pay to the client the funds in possession of the lawyer which the client is entitled to receive.

We turn now to the recommended discipline. The hearing panel on a two to one vote suggested indefinite suspension of the respondent from the practice of law. The report then was filed

with the entire Board of Discipline of Attorneys. A majority of the Board recommended indefinite suspension. The respondent argues such discipline is inappropriate.

In reviewing our previous cases we note the following actions have justified indefinite suspension: Conviction of a felony (*In re Evans,* 229 Kan. 182, 621 P.2d 991 [1981]); failure to carry out appeal services for which the attorney is hired, plus failure to maintain a separate trust fund for client's funds (*State v. Regier,* 228 Kan. 746, 621 P.2d 431 [1980]); failure to comply with a court order requiring funds wrongfully withdrawn from an estate to be returned (*State v. Goode,* 228 Kan. 3, 612 P.2d 149 [1980]); accepting double fees for the same service, one fee from the city and, without knowledge of the city, one fee from the special bond counsel (*State v. Romine,* 227 Kan. 745, 609 P.2d 681 [1980]); failure to represent a client in a civil action by filing proper pleadings thereby allowing a default judgment to be taken against the client (*State v. McGrew,* 227 Kan. 741, 609 P.2d 680 [1980]); dishonesty, fraud, deceit or misrepresentation involving misuse of client's funds (*State v. Freeman,* 229 Kan. 639).

Respondent's misconduct does not appear to be as serious as that in the above cases. He was open and above board with his client. He admitted being short of funds and asked the client for time in which to repay the previous expenses advanced. He continued to acknowledge he owed these amounts. There was no finding that he intended to retain the funds permanently. There was no neglect of his client's legal matters and no failure to comply with court orders. He was not guilty of dishonesty, fraud or deceit. There was no criminality. This was a single violation with no prior history of complaints against him. It was a failure to refund moneys advanced by a client after demand was made.

In the following cases this court has determined that public censure was a proper discipline: Where the attorney was dilatory in representing a client but not guilty of any dishonesty, fraud or deceit (*State v. Granger,* 228 Kan. 401, 613 P.2d 954 [1980]); neglecting legal business, failing to withdraw from case, and failing to refund a fee as promised (*State v. Russell,* 227 Kan. 897); withholding a client's funds for an extended period of time (*In re Hanna,* 197 Kan. 645, 418 P.2d 140 [1966]); failure on demand to pay money to a client, but without intent to convert the funds (*In re McAnarney,* 197 Kan. 643, 418 P.2d 137 [1966]).

Among the matters to be considered in determining the nature and extent of punishment or discipline for a breach of professional responsibility, this court may consider in mitigation the following: (1) Whether restitution has been made; (2) previous violations or the absence thereof; (3) previous good character and reputation in the community; (4) the present or past attitude of the attorney as shown by his cooperation during the hearing and acknowledgement of the transgression; (5) letters from clients, friends and lawyers in support of the character and general reputation of the attorney; and (6) any statement by the complainant expressing satisfaction with any restitution made and requesting no discipline. 7 Am.Jur.2d, Attorneys at Law § 52, p. 112; *State v. Stakes,* 227 Kan. 711, 608 P.2d 997 (1980) (aggravating or mitigating circumstances); *State v. Leon,* 229 Kan. 178, 621 P.2d 1016 (1981) (previous record of professional conduct); *In re Ratner,* 194 Kan. 362, 399 P.2d 865 (1965) (testimony as to attorney's reputation and character).

Under all the circumstances of this case we have concluded that discipline by way of public censure is more appropriate for the respondent's misconduct than is indefinite suspension.

It is therefore considered, ordered and adjudged by the court that Charles S. Scott, Sr. be and he is hereby publicly censured by this court. The costs of this proceeding are taxed against the respondent and are ordered paid forthwith.

PRAGER, J., not participating.