483 So.2d 775 (1986)
SPENCE, PAYNE, MASINGTON & GROSSMAN, P.A., Appellant,
v.
PHILIP M. GERSON, P.A., Appellee.
No. 84-2636.
District Court of Appeal of Florida, Third District.
February 11, 1986.
Rehearing Denied March 21, 1986.
*776 Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Miami, for appellant.
Arky, Freed, Stearns, Watson, Greer & Weaver and Eugene E. Stearns and Bradford Swing, Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
PER CURIAM.
We reverse a judgment awarding to the appellee, Philip M. Gerson, P.A. (a professional association through which Mr. Gerson engages in the practice of law), the sum of $280,000, being the trial judge's assessment of the reasonable value of services rendered by Gerson to Mrs. Irene Speiller. We hold that because the employment of Gerson was solicited in violation of Section 877.02(1), Florida Statutes (1981), any agreement to employ him was void, and any services rendered by him pursuant to the purported agreement not compensable under a quantum meruit theory.[1]
Leonard Speiller was killed in an automobile accident in August 1981. Within a day of the accident, Philip Gerson's secretary received a telephone call from Larry Manns  a friend of the Speillers, and a friend and regular client of Philip Gerson  notifying Gerson of Mr. Speiller's death, and stating, without basis in fact, that Mrs. Speiller "was expecting his call." Gerson's secretary telephoned him in Chicago and advised him of Manns' call. Although Gerson and Mrs. Speiller were complete strangers, and notwithstanding that Mrs. Speiller had not sought his employment, Gerson instructed his secretary to hire an independent investigator, Richard McGraw, and "have McGraw find out what is going on." McGraw was hired and instructed by Gerson's secretary to obtain a retainer agreement from Mrs. Speiller. McGraw presented himself at Mrs. Speiller's home after she returned from the funeral home the day after the accident and obtained her signature on a forty-percent contingent fee contract employing Gerson as her attorney. The following Monday, Mrs. Speiller met with Gerson, and he affixed his signature to the retainer agreement.
Gerson filed a wrongful death action on Mrs. Speiller's behalf in October 1981. For reasons not pertinent here, Mrs. Speiller discharged Gerson in April 1982, with a settlement offer of $250,000 then outstanding. The following day, Mrs. Speiller hired the appellant law firm to represent her under a forty-percent contingency fee contract. In May 1982, Gerson filed an "attorney's lien" in the action. The appellant firm thereafter settled Mrs. Speiller's wrongful death action for $1,400,000, and both the settlement and a forty-percent contingent fee of $560,000 were approved by the trial court.
Pursuant to a requirement of the order approving the settlement, the appellant placed the $560,000 in an interest-bearing account to await resolution of Gerson's lien claim. Shortly thereafter, Gerson filed a petition seeking enforcement of his attorney's lien. The appellant's answer to the petition asserted that Gerson was not entitled to any fee because, inter alia, the contract upon which he based his claim had been illegally solicited and was therefore void. Following a non-jury trial, at which the above-recited facts were essentially undisputed, the trial court entered judgment for Gerson in the amount of $280,000, that is, fifty percent of the total fee.
It is appellant's position here, as it was below, that Gerson's contract with Mrs. Speiller was invalid because illegally procured in violation of Section 877.02(1), Florida Statutes (1981).[2] That section provides:

*777 "It shall be unlawful for any person or his agent, employee or any person acting on his behalf, to solicit or procure through solicitation either directly or indirectly legal business, or to solicit or procure through solicitation a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal service... ."
A violation of the statute results in the contract being void as a matter of public policy and thus incapable of supporting a charging lien. See Thomas v. Ratiner, 462 So.2d 1157 (Fla. 3d DCA 1984), rev. denied, 472 So.2d 1182 (Fla. 1985).
We agree with the appellant that the evidence, viewed most favorably to Gerson, establishes that Mrs. Speiller had not even thought about employing an attorney at the time she met Mr. Manns at the funeral home the day following the accident; that Mr. Manns had telephoned Gerson's office before meeting Mrs. Speiller at the funeral home; and that the first thing Mrs. Speiller heard about an attorney was Mr. Manns' statement to her at the funeral home that he had called his attorney and that his attorney would be in touch with her. In short, this testimony disproves any notion that Mrs. Speiller approached Gerson through Mr. Manns and proves instead that Gerson approached Mrs. Speiller at the suggestion of Mr. Manns. Under these circumstances, the attorney is held to have unlawfully solicited the legal business.[3]Cf. The Florida Bar v. Abramson, 199 So.2d 457 (Fla. 1967) (retainer contracts executed after attorney, in response to telephone call from unknown person advising that accident victims wanted attorney to come to hospital in order to represent victims, violated anti-solicitation provision of Integration Rule of Florida Bar where person who placed telephone call not authorized to act on behalf of potential clients); State v. Kiesow, 210 Kan. 549, 502 P.2d 623 (1972) (where client introduced attorney to client's neighbors resulting in contract under which attorney would represent neighbors in wrongful death action, attorney's conduct violated anti-solicitation provision of Code of Professional Responsibility); Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La. 1976) (where attorney's employee and a stranger to attorney introduced attorney to a "friend" of the stranger resulting in representation by attorney of "friend," attorney violated anti-solicitation provision of Code of Professional Responsibility).
Gerson's argument, made for the first time on appeal incidentally, that Mr. Manns had the "apparent authority" to approach Gerson on Mrs. Speiller's behalf, misapprehends the doctrine of apparent authority. "Apparent authority" does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, "apparent authority" exists only where the principal creates the appearance of an agency relationship. Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442, 449 n. 5 (Fla. 5th DCA 1981), approved, 433 So.2d 491 (Fla. 1983); Owen Industries, Inc. v. Taylor, 354 So.2d 1259 (Fla. 2d DCA 1978); Taco Bell of California v. Zappone, 324 So.2d 121 (Fla. 2d DCA 1975); H.S.A., Inc. v. Harris-In-Hollywood, Inc., 285 So.2d 690 (Fla. 4th DCA 1973), cert. dismissed, 290 So.2d 493 (Fla. 1974). See also 2 Fla. Jur.2d, Agency and Employment, §§ 35-36 (1977) (and cases cited therein). There is no evidence in this case that Mrs. Speiller did anything which would justify a conclusion by anyone that Mr. Manns was *778 acting as her agent, that is, with her apparent authority, when he contacted Gerson.
Gerson also suggests that, even if the evidence demonstrates, as it does, that his contract is void for illegality, he should nevertheless recover by way of the equitable remedy of quantum meruit. He cites no authority to support this suggestion because, quite understandably, none exists. To approve such a suggestion would be to condemn unlawful conduct on the law side of the court and approve the same unlawful conduct on the equity side of the court. Clearly, as long as solicitation is against the law, an attorney who engages in it is entitled to no fruit from the forbidden tree on any theory of recovery recognized in law or equity. Cf. Osteen v. Morris, 481 So.2d 1287 (Fla. 5th DCA 1986) (where motor vehicle repair shop fails to provide customer with written estimate as required by statute, shop not entitled to recover cost of repairs under quantum meruit theory "because the recognition of a quasi-contractual obligation by the law in this situation would necessarily circumvent the very dictates of the statute by enabling a motor vehicle repair shop to ignore the statutory requirements of providing a written estimate or obtaining a written waiver").
Accordingly, the judgment under review is reversed, with directions to enter judgment against Gerson on his claimed charging lien.
Reversed with directions.
NOTES
[1] Our holding makes it unnecessary for us to rule on the appellant's other points on appeal.
[2] Because Mr. Speiller was killed in a motor vehicle accident, an additional statute is arguably applicable here  Section 817.234(9), Florida Statutes (1981):

"It is unlawful for an attorney to solicit any business relating to the representation of persons injured in a motor vehicle accident for the purpose of filing a motor vehicle tort claim or a claim for personal injury protection benefits required by s. 627.736. Any attorney who violates the provisions of this subsection is guilty of a felony of the third degree... ."
[3] This court's recent opinion in Agudo, Pineiro & Kates, P.A. v. Harbert Construction Company, 476 So.2d 1311 (Fla. 3d DCA 1985), deals not with subsection 1, but rather subsection 2 of Section 877.02, Florida Statutes, which makes it unlawful for certain specified persons, such as hospital employees, to communicate with attorneys for the purpose of aiding the attorney in soliciting legal business. The facts recited in Agudo show, unlike the present case, that the client contacted and sought out the attorney at the recommendation of a third person.