No. 60,615

In The Matter of J. Taylor Neuschwander, *Respondent.*

(747 P.2d 104)

Opinion filed December 11, 1987.

*Stanton A. Hazlett*, Deputy Disciplinary Administrator, argued the cause and was on the brief for petitioner.

*J. Douglas Miller*, of McKinley, Miller, Swanson & Lucas, P.A., of Liberal, argued the cause and was on the brief for respondent.

*Per Curiam*: This original proceeding in discipline was filed by the office of the disciplinary administrator against J. Taylor Neuschwander, of Garden City, an attorney admitted to the practice of law in the State of Kansas. The facts, as determined by a hearing panel of the Kansas Board for Discipline of Attorneys, are not seriously disputed.

In January 1984, respondent became a member of the board of directors and treasurer of the Garden City Friends of the Zoo, Inc., a not for profit corporation (hereinafter Friends), which supports and promotes the Lee Richardson Zoo in Garden City. Respondent was responsible for handling the finances of the Friends subject, of course, to its by-laws and directions from the board of directors. One of respondent's duties was to file a monthly financial report with the board. In the summer and fall of 1984, the zoo was involved in an expansion program and the Friends board determined in October that corporate funds should be invested in liquid assets so money would be available for payment of construction costs as they became due. Respondent opened a new Friends account with the Garden National Bank on October 15, 1984, with an initial deposit of approximately $4,500.00. Prior to this time, the account was maintained with Fidelity State Bank of Garden City and all checks or withdrawals required the signatures of both the president and treasurer of the Friends. Checks and withdrawals from the new account at Garden National Bank only required the signature of the treasurer. At about this same time, respondent needed substantial cash for payment of previously incurred overhead obligations arising from his law practice. On November 1, 1984,

respondent wrote a check on the Friends account for $4,000.00 and deposited it in a personal account at the Garden National Bank. The November bank statement for the Friends account reflected a balance of only $593.93. Respondent, however, submitted a treasurer's report which reflected a cash balance of $4,593.93. Although respondent contends the $4,000.00 constituted a loan on which he intended to pay interest at the rate of 10%, none of the other board members were advised of the loan. On December 3, 1984, respondent wrote another check on the Friends account in the amount of $6,000.00 and deposited it in his personal account. This transaction was not revealed to the board or any of the other officers. On January 3, 1985, respondent wrote a check for $10,000.00 and attempted to deposit it in his personal account. An officer of the Garden National Bank notified John Scheopner, president of the Friends, of the transaction and Mr. Scheopner immediately stopped payment on the check. Respondent was confronted by Mr. Scheopner and another officer of the Friends board. Respondent then paid $10,150.00 to the Friends to cover the $10,000.00 previously taken from the Friends account and $150.00 in interest.

Respondent testified that he did not advise any other officer or board member of the "loans" he made to himself nor the terms thereof, and that he prepared no notes, documents, or written memoranda of the transactions. He also conceded that his handling of the transactions gave the appearance of impropriety and that if he had it to do over again he would do it differently. Respondent contends that the Friends could only obtain 8% interest from an on-demand money market account and that as respondent would have had to pay 14% to borrow the money elsewhere, everyone was benefited by the loans to himself at 10% and no one was hurt by his actions.

The hearing panel of the Kansas Board for Discipline of Attorneys found:

"It is the unanimous finding of the panel that although in its purest form Respondent was not representing Friends in an attorney-client relationship that would make his actions, no matter his intent, a violation of DR 9-102 [235 Kan. clii] which obligates an attorney to preserve the identity of funds of his client, Respondent acquired his position of treasurer while as a practicing attorney in his community which places upon Respondent the mantle of public trust and

confidence that in performing voluntary duties involving a fiduciary caretaker role of funds, his actions will be beyond reproach.

"The loaning to himself of funds by writing checks in favor of himself on accounts that Respondent holds in public trust without any evidence of any expressed definite prior approval, without any evidence of a written obligation of repayment and terms therefor and without even telling members of the board until after their independent discovery that precipitated an ugly and unnecessary confrontation, all reflect adversely on the Respondent's fitness to practice law pursuant to DR 1-102[A](6) [235 Kan. cxxxvii]."

The panel unanimously recommended that respondent be suspended from the practice of law.

The first issue raised by respondent is whether his conduct as treasurer of the Friends adversely reflected on his fitness to practice law, in violation of DR 1-102(A)(6). Respondent essentially argues his conduct should be viewed in the light of the informal manner in which this volunteer organization was conducted, and that his "mere error in judgment" in failing to obtain specific authority for the loan transaction and in failing to document it "in more detail" is not a sufficient basis for disciplinary action.

By respondent's own admissions, he executed loans to himself, while serving as treasurer of the corporation, in order to obtain a lower rate of interest than the 14 percent otherwise available to him. "The treasurer of a corporation is the custodian of its funds for its benefit and in trust for it, not for himself nor for any other officer or employee." 19 C.J.S., Corporations § 754, p. 98. While K.S.A. 17-6303 authorizes corporate loans to officers and directors, as well as other employees, such loans may only be made "whenever, in the judgment of the directors, such loan . . . may reasonably be expected to benefit the corporation." It is clear that respondent violated his fiduciary duties as treasurer of the corporation. Furthermore, the facts do not support respondent's contention that the corporation was operated loosely, informally, and without guidelines. It operated under a set of by-laws which was periodically reviewed and amended, and, in fact, respondent participated in making certain amendments in early 1984. Regular monthly meetings of the board of directors were held, minutes were kept, and the treasurer was required to make regular reports.

The fact that its directors and officers served as volunteers

without compensation does not reduce the fiduciary duty owed to the corporation. In *Attorney Grievance Comm'n v. Silk*, 279 Md. 345, 369 A.2d 70 (1977), an attorney was disbarred for mishandling funds of the Mount St. Joseph's Father's Club of Mount St. Joseph High School during the year he served as its treasurer and president. The court held:

"[T]here appears to be no sound reason for regarding misappropriations committed in a non-professional capacity more leniently than those committed in a professional capacity. Each involves a breach of trust or of a fiduciary relationship and bear equally on the fitness of a lawyer to practice his profession." 279 Md. at 348.

The court held the attorney violated DR 1-102(A)(3) and (4). We think it is clear that respondent's actions in the present case constitute a misappropriation of the funds of the Friends which had been entrusted to him in his capacity as treasurer and, as such, constitute a violation of DR 1-102(A)(6).

Respondent next asserts that his actions do not constitute a violation of DR 9-102 as there was no attorney-client relationship with the Friends. While the panel referred to DR 9-102 in its report, it did not find respondent in violation of it and there is no valid issue on this point before the court.

Finally, respondent asserts that the recommended discipline of suspension is too severe under all the circumstances. The findings and recommendations of the hearing panel are advisory only and are not binding on the court. Supreme Court Rule 212(f), 235 Kan. cxxx. However, the court strives for consistency in determining punishment. *State v. Alvey*, 215 Kan. 460, 466, 524 P.2d 747 (1974).

Misappropriation of funds, whether it occurs in an attorney-client relationship or in some other fiduciary capacity, constitutes one of the most serious offenses which an attorney may commit. In *State v. Freeman*, 229 Kan. 639, 629 P.2d 716 (1981), an attorney was disbarred for misuse of funds which he held in his capacity as trustee for the benefit of a cousin. In considering the appropriate discipline, we stated:

"In imposing discipline, we must consider not only the evidence of wrongdoing but also any aggravating or mitigating circumstances." 229 Kan. at 644.

Respondent has been a respected member of the bar since 1974 and no prior complaints have been filed against him. When

confronted by other officers of the Friends he promptly made full restitution of the misappropriated funds and paid interest thereon. Under all of the circumstances of this case, a majority of the court is of the opinion that respondent should be disciplined by suspension for a period of one year from the effective date of this opinion. A substantial minority of the court would impose more severe discipline.

IT IS THEREFORE ORDERED that J. Taylor Neuschwander be and he is hereby suspended from the practice of law in the State of Kansas for a period of one year from the 11th day of December, 1987.

IT IS FURTHER ORDERED that respondent forthwith comply with the provisions of Supreme Court Rule 218 (235 Kan. cxxxii) and pay the costs of this proceeding.